## PLUMMER *v.* COLER.

ERROR TO THE SURROGATE'S COURT OF THE COUNTY OF NEW YORK,
STATE OF NEW YORK.

No. 489.   Argued February 27, 28, 1900. — Decided May 14, 1900.

The right to take property by will or descent is derived from and regulated
by municipal law; and, in assessing a tax upon such right or privilege,
the State may lawfully measure or fix the amount of the tax by referring
to the value of the property passing; and the incidental fact that such
property is composed, in whole or in part, of Federal securities, does not
invalidate the state tax, or the law under which it is imposed.

The relation of the individual citizen and resident to the State in which he
resides is such that his right, as the owner of property, to direct its de-
scent by will or permit its descent to be regulated by statute, and his
right as legatee, devisee or heir to receive the property of his testator or
ancestor, are rights derived from and regulated by the State; and no
sound distinction can be drawn between the power of the State, in impos-
ing taxes upon franchises of corporations, composed of individual per-
sons, and in imposing taxes upon the right or privilege of individuals to
avail themselves of the right to grant and to receive property under the
statutes regulating the descent of the property of decedents.

Joseph Plummer, a citizen and resident of New York, died
October 28, 1898, leaving a last will whereby he bequeathed to
Harry Plummer, his executor, forty thousand dollars in United
States bonds, issued under the Funding Act of 1870, in trust,
to hold the same during the lifetime of Ella Plummer Brown,
daughter of the testator, and to pay the income thereof to her
during her life, and at her death to divide the same between
and amongst her issue then living.

The value of this life interest was computed by the appraisers
at the sum of $16,120, and a tax of $161.20 was imposed thereon
by the surrogate of the county of New York.   From this ap-
praisal and the order imposing the tax an appeal was taken to
the Surrogate's Court of the county and State of New York,
where the following stipulation was filed :

"It is stipulated and agreed by and between the attorneys
for the respective parties to the above-entitled proceedings that

the forty thousand dollars in amount at par of bonds of the United States of America, of which the said Joseph Plummer died possessed, and upon the interest in which of Ella Plummer Brown a tax of $161.20 was fixed, assessed and determined by the order appealed from, consist of four per cent bonds issued in the year 1877 and due in the year 1907, under and by virtue of and pursuant to the statute of the United States, passed July 14, 1870, entitled 'An act to authorize the refunding of the national debt,' which authorized the Secretary of the Treasury, among other things, to issue various classes of bonds in the sums therein mentioned, including ' a sum or sums not exceeding in the aggregate one thousand million dollars of like bonds, . . . payable at the pleasure of the United States after thirty years from the date of their issue, and bearing interest at the rate of four per cent per annum; all of which said several classes of bonds and the interest thereon shall be exempt from the payment of all taxes or duties of the United States, as well as from taxation in any form by or under state, municipal or local authority ; and the said bonds shall have set forth and expressed upon their face the above specified conditions;' and that pursuant to said statute there is set forth on the face of each of said bonds the following clause, that is to say : ' The principal and interest are exempt from the payment of all taxes or duties of the United States, as well as from taxation in any form by or under state, municipal or local authority.' "

On December 22, 1899, the Surrogate's Court affirmed the appraisal and the order imposing a tax. Thereupon Harry Plummer, executor, appealed to the appellate division of the Supreme Court of the State of New York, which court on January 5, 1900, affirmed the order of the surrogate and the decree of the Surrogate's Court. From this decree of the appellate division of the Supreme Court an appeal was taken to the Court of Appeals of the State of New York, where, on January 8, 1900, the proceedings and order of the surrogate and the decree of the appellate division were affirmed.

In the notice of appeal to the Surrogate's Court and in that of the appeal to the Court of Appeals the grounds of appeal were stated to be the invalidity of the statute of New York pur-

porting to impose a tax upon a transfer by legacy of bonds of the United States, and the invalidity of the statute of the State of New York and of the authority exercised thereunder by the appraiser and the surrogate, in so far as United States bonds were concerned. And the appellant specially set up and claimed a title, right, privilege and immunity under the Constitution of United States, and under the statute of the United States in respect to the exemption of said bonds from state taxation in any form.

On January 9, 1900, a writ of error was sued out from this court.

*Mr. William V. Rowe* and *Mr. Treadwell Cleveland* for plaintiff in error.

*Mr. Jabish Holmes, Jr.,* and *Mr. Edgar J. Levey* for defendant in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

In this case we are called upon to consider the question whether, under the inheritance tax laws of a State, a tax may be validly imposed on a legacy consisting of United States bonds issued under a statute declaring them to be exempt from state taxation in any form.

It is not open to question that a State cannot, in the exercise of the power of taxation, tax obligations of the United States. *Weston* v. *Charleston,* 2 Pet. 449; *Bank of Commerce* v. *New York City,* 2 Black, 620; *Home Insurance Co.* v. *New York,* 134 U. S. 594, 598.

So, likewise, it is settled law that bonds issued by a State, or under its authority by its public municipal bodies, are not taxable by the United States. *Mercantile Bank* v. *New York,* 121 U. S. 138; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 583.

The reasoning upon which these two lines of decision proceed is the same, namely, as was said by Mr. Justice Nelson in *Col-*

*lector* v. *Day*, 11 Wall. 113, 124: "The general government and the States, although both exist within the same territorial limits, are separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres. The former in its appropriate sphere is supreme; but the States within the limits of their powers not granted, or, in the language of the Tenth Amendment, 'reserved,' are as independent of the general government as that government within its sphere is independent of the States;" and, as was said by Mr. Chief Justice Fuller, in *Pollock* v. *Farmers' Loan & Trust Company*, 157 U. S. 537: "As the States cannot tax the powers, the operations or the property of the United States, nor the means which they employ to carry their powers into execution, so it has been held that the United States have no power under the Constitution to tax either the instrumentalities or the property of a State."

As, then, for the reasons advanced and applied in the previous cases, it is not within the power of a State to tax Federal securities, it was not necessary for Congress, in order to secure such immunity, to declare in terms, in the act of July 14, 1870, and on the face of the bonds issued thereunder, that the principal and interest were exempt from taxation in any form by or under state, municipal or local authority. Such a declaration did not operate to withdraw from the States any power or right previously possessed, nor to create, as between the States and the holders of the bonds, any contractual relation. It doubtless may be regarded as a legitimate mode of advising purchasers of such bonds of their immunity from state taxation, and of manifesting that Congress did not intend to waive this immunity, as it had done in the case of national banks, which are admittedly governmental instrumentalities.

With these concessions made, we are brought to the pivotal question in the case, and that question is thus presented in the second point discussed in the brief filed for the plaintiff in error. "If the question of the right of the State to impose the tax now in question be considered merely with reference to the inherent lack of power of the State to impose such a tax, because of the provisions of the Constitution of the United States bearing upon

that question, without any aid from the statute of the United States under which these bonds were issued, or the exemption clause contained in the bonds, we conceive it to be entirely clear that the tax in question is unconstitutional, because impairing and burdening the borrowing power of the United States." Or, as stated elsewhere in the brief : " The States have no power to impose any tax or other burden which would have the effect to prevent or hinder the government of the United States from borrowing such amounts of money as it may require for its purposes, on terms as beneficial and favorable to itself, in all respects, as it could do if no such tax were imposed by the State."

It will be observed that these propositions concede that the tax law of the State of New York in question does not expressly, or by necessary implication, propose to tax Federal securities. It is only when and if, in applying that law to the estates of decedents, such estates are found to consist wholly or partly of United States bonds, that the reasoning of the plaintiff in error, assailing the validity of the statute, can have any application. And the contention is that individuals, in forming or creating their estates, will or may be deterred from offering terms, in the purchasing of such bonds, as favorable as they otherwise might do, if they are bound to know that such portion of their estates as consists of such bonds is to be included, equally with other property, in the assessment of an inheritance tax.

Before addressing ourselves directly to the discussion of these propositions we shall briefly review the decisions in whose light they must be determined.

And, first, what is the voice of the state courts ?

A detailed examination of the state decisions is unnecessary, because it is admitted, in the brief of the plaintiff in error that in many, if not in most, of the States of the Union inheritance or succession tax laws, similar to the New York statute in question, are and have been long in operation, and that the question of their validity, in cases like the present, has always heretofore been determined by the state courts against the United States. We cannot, however, accede to the suggestion in the brief that

the state decisions are entitled to but little consideration, for the reason that " they are the determinations of a distinct sovereignty, adjudicating upon the rights of the nation, and naturally jealous of their own." Undoubtedly, in a case like the present, the national law is paramount, and its final exposition is for this court. Still, for reasons too obvious to require statement, the decisions of the state courts, particularly if they are uniform and concur in their reasoning, are worthy of respectful consideration, even if the question be, at last, a Federal one.

Without attempting a rehearsal of the state decisions, we may profitably examine the reasons and conclusions of several of the leading state courts.

A statute of Massachusetts of 1862 provided that every institution for savings, incorporated under the laws of that State, should pay a tax on account of its depositors, on the average amount of its deposits. The Provident Institution of Savings, a corporation having no property except its deposits and the property in which they were invested, and authorized by the general statute of Massachusetts to receive money on deposit and to invest its deposits in securities of the United States, had on deposit on the 1st day of May, 1865, $8,047,652—of which $1,327,000 stood invested in public funds of the United States exempt by law of the United States from taxation under state authority. The company declined to pay that portion of the tax on its property invested in United States bonds. On suit brought by the Commonwealth to recover the same, the Supreme Judicial Court of Massachusetts, regarding the tax as one on franchise, and not on property, held the tax to be lawful. *Commonwealth* v. *Provident Institution*, 12 Allen, 312.

By a subsequent statute of 1864, c. 208, corporations having capital stock divided into shares were required to pay a tax of a certain percentage upon " the excess of the market value " of all such stock over the value of its real estate and machinery. The Hamilton Manufacturing Company refused to pay the tax upon that portion of its property which was invested in United States securities, because, by the act of Congress authorizing their issue, they were exempt from taxation by state authority.

It was held by the Supreme Judicial Court of Massachusetts that the tax was to be regarded as a tax on the franchise and privileges of the corporation, and was lawful so far as related to Federal securities. *Commonwealth* v. *Hamilton Company,* 12 Allen, 298, 300.

The legislature of Connecticut in 1863 enacted that the savings banks in the State should annually pay to the treasurer of the State a sum equal to three fourths of one per cent on the total amount of deposits. The " Society for Savings," a corporation of Connecticut, refused to pay the tax upon that portion of its deposits which was invested in United States bonds, declared by act of Congress to be exempt from taxation by state authority.

On a suit brought by Coite, treasurer of the State, to recover the tax thus withheld, the Supreme Court of Connecticut decided that the tax in question was not a tax on property, but on the corporation as such, and rendered judgment accordingly for the plaintiff. *Coite* v. *Savings Bank,* 32 Conn. 173.

In Pennsylvania it has been repeatedly held that the collateral inheritance law of that State, imposing a tax upon the total amount of the estates of decedents, is valid, although the estate may consist in whole or in part of United States bonds; and this upon the principle that what is called a collateral inheritance tax is a bonus, exacted from the collateral kindred and others, as the conditions on which they may be admitted to take the estate left by a deceased relative or testator; that the estate does not belong to them, except as a right to it is conferred by the State; that the right of the owner to transfer it to another after death, or of kindred to succeed, is the result of municipal regulation, and must, consequently, be enjoyed subject to such conditions as the State sees fit to impose. *Strode* v. *Commonwealth,* 52 Penn. St. 181; *Clymer* v. *Commonwealth,* 52 Penn. St. 181, 186.

In Virginia the highest court of the State has construed a similar statute as imposing the tax, not upon the property, but upon the privilege of acquiring it by will or under the intestate laws. *Eyre* v. *Jacob,* 14 Grat. 422; *Miller* v. *Commonwealth,* 27 Grat. 110.

The Supreme Court of Illinois has held valid a statute of that State, entitled "An act to tax gifts, legacies and inheritances in certain cases, and to provide for the collection of the same." Rev. Stat. Ill. 1895, c. 120. The constitutionality of the act was denied, because of the alleged want of reasonableness in its classification of those subject to the tax and the want of equality in the amounts imposed. But the Supreme Court held that an inheritance tax is a tax not upon property, but on the succession, and that the right to take property by devise or descent is the creature of the law, a privilege, and that the authority which confers the privilege may impose conditions upon it. *Kochersperger* v. *Drake*, 167 Illinois, 122.

By an act of the legislature of New York, Laws of 1881, c. 361, p. 481, it was enacted that "every corporation, joint stock company or association whatever, now or hereafter incorporated or organized under any law of this State, : . . shall be subject to and pay a tax, as a tax upon its corporate franchise or business, into the treasury of the State, annually, to be computed as follows: If the dividends made or declared by such corporation, joint stock company or association during any year ending with the first day of November amount to more than six per centum upon the par value of its capital stock, then the tax to be at the rate of one quarter mill upon the capital stock for each one per centum of dividend so made or declared," etc.

The Home Insurance Company, a corporation of the State of New York, having a capital stock of $3,000,000, declared a dividend of ten per cent for the year 1881. During the year 1881 the company had part of its capital invested in United States bonds, exempt from state taxation. The amount so invested changed from $3,300,000 to $1,940,000 in such bonds during the year 1881. The company, in tendering payment of its tax, claimed that so much of the laws of New York as required a tax to be paid upon the capital stock of the company, without deducting from the amount so to be paid that part invested in bonds of the United States, was unconstitutional and void. In an action brought to recover such unpaid portion of the tax, the Supreme Court of New York, at general term, ad-

judged that the company was liable to pay such tax; and this judgment was affirmed by the Court of Appeals. The view of those courts was that, the tax being upon the franchise of the company, it mattered not how its capital stock or property may be invested, whether in United States securities or otherwise. *N. Y. & Home Insurance Co.* v. *New York*, 92 N. Y. 328.

In *Monroe Savings Bank* v. *Rochester*, 37 N. Y. 365, it was said:

"It is true that where a tax is laid upon the property of an individual or a corporation, so much of their property as is vested in United States bonds is to be treated, for the purposes of assessment, as if it did not exist, but this rule can. have no application to an assessment upon a franchise, where a reference to property is made only to ascertain the value of the thing assessed. It is, however, argued with great ingenuity and skill that, inasmuch as the plaintiffs, among other powers given them, have the right to invest their moneys in United States bonds, their franchises and privileges cannot be taxed by the State. The power thus to invest their money, it is contended, is a franchise for lending to the United States, and therefore cannot be taxed, because such taxation would trench on the power of the United States to borrow. This is stretching the argument too far. It cannot be pretended that the State would violate any obligation resulting from the power of the United States to borrow money, if the law conferring the power upon the plaintiff to invest their money in United States stocks and bonds were repealed. The State is under no obligation, express or implied, to legislate to enhance the credit of the general government, and should it adopt a system of legislation which indirectly produces such a result, its power of repeal cannot be doubted. The position, that a franchise granted by the bounty of the State is not taxable, because coupled with that franchise is the privilege of loaning money to the general government, is not more untenable than to argue that, because such a franchise enhances the credit of the United States, therefore the legislature could not repeal the law granting the franchise without violating its constitutional obligation. Suppose the legislature had limited the amount in which the plaintiff

could invest its money in the securities of the United States, it
will not be contended that such limitation would be void be-
cause it impaired the power of the United States to borrow
money.   It must, therefore, be regarded as sound doctrine to
hold that the State, in granting a franchise to a corporation
may limit the powers to be exercised under it, and annex con-
ditions to its enjoyment, and make it contribute to the revenues
of the State.   If the grantee accepts the boon it must bear the
burden."

In *Matter of Sherman*, 153 N. Y. 1, it was said by the Court
of Appeals of New York, per Chief Judge Andrews, that—

" This court has not been called upon to consider the question
of the power of the State to prescribe that in ascertaining the
value of the property of a decedent for the purpose of fixing
the tax, under the collateral inheritance or transfer tax laws,
the value of Federal securities owned by the decedent shall be
included.   But we apprehend that the existence of the power
cannot be denied upon reason or authority.   The tax imposed
is not, in a proper sense, a tax upon the property passing by
will, under the statutes of descents or distribution.   It is a tax
upon the right of transfer by will, or under the intestate law
of the State.   Whether these laws are regarded as a limitation
on the right of a testator to dispose of property by will, or
upon the right of devisees to take under a will, or the right
of heirs or next of kin to succeed to a property of an intestate,
is immaterial.   The so-called tax is an exaction made by the
State in the regulation of the right of devolution of prop-
erty of decedents, which is created by law, and which the
law may restrain or regulate.   Whatever the form of the prop-
erty, the right to succeed to it is created by law, and if the
property consists of government securities, the transferee de-
rives his right to take them as he does his right to take any
other property of the decedent, under the laws of the State, and
the State by these statutes makes the right subject to the burden
imposed."

And in the case in hand, the very matter of complaint is
that the courts of the State of New York held that, under the
laws of that State, an inheritance tax can be validly assessed

against the entire estate of a decedent, although composed in greater part of United States bonds; and the language of the surrogate, affirmed by the Court of Appeals, was as follows:

"It is almost unnecessary to state that the theory on which the courts have held this kind of security taxable is that the tax is not upon the bonds themselves, but upon the transfer thereof. This distinction is firmly established in this State. See, besides the *Sherman case, Matter of Merriam*, 141 N. Y. 479; *Matter of Bronson*, 150 N. Y. 1; and it seems to have been recognized in the Supreme Court of the United States, 163 U. S. 625, *United States* v. *Perkins*, in which *Matter of Merriam* was affirmed."

The decisions of the state courts may be summarized by the statement that it is competent for the legislature of a State to impose a tax upon the franchises of the corporations of the State, and upon the estates of decedents resident therein, and in assessing such taxes and as a basis to establish the amount of such assessments, to include the entire property of such corporations and decedents, although composed, in whole or in part, of United States bonds; and that the theory upon which this can be done consistently with the Constitution and laws of the United States is that such taxes are to be regarded as imposed, not upon the property, the amount of which is referred to as regulating the amount of the taxes, but upon franchises and privileges derived from the State.

Let us now proceed to a similar survey of the Federal authorities on this subject.

*Mager* v. *Grima*, 8 How. 490, was a case where, by the law of Louisiana, a tax of 10 per cent was imposed on legacies, when the legatee is neither a citizen of the United States nor domiciled in that State, and the executor of the deceased or other person charged with the administration of the estate was directed to pay the tax to the state treasurer. Felix Grima was the executor of John Mager, and retained the amount of the tax in order to pay it over as the law directed. Suit was brought by a legatee to recover it, upon the ground that the act of Louisiana was repugnant to the Constitution of the United States. The validity of the act was sustained by

the state courts, and the cause was brought to this court. The judgment of. the state courts was here affirmed, and it was said, in the opinion delivered by Chief Justice Taney:

" Now the law in question is nothing more than an exercise of the power which every State and sovereignty possesses, of regulating the manner and terms upon which property, real or personal, within its dominion may be transmitted by last will and testament, or by inheritance, and of prescribing who shall and who shall not be capable of taking it. Every State or nation may unquestionably refuse to allow an alien to take, either real or personal property, situated within its limits either as heir or legatee, and may, if it thinks proper, direct that property so descending or bequeathed shall belong to the State. In many of the States of this Union at this day real property devised to an alien is liable to escheat. And if a State may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy. This has been done by Louisiana. The right to take is given to the alien, subject to a deduction of ten per cent for the use of the State."

In *Van Allen* v. *The Assessors,* 3 Wall. 573, it was held that it was competent for Congress to authorize the States to tax the shares of banking associations organized under the act of June 3, 1864, without regard to the fact that a part or the whole of the capital of such association was invested in national securities declared by the statutes authorizing them to be " exempt from taxation by or under state authority." This decision has ever since been acted upon, and its authority has never been questioned by any court, and from it we learn that there is no undeviating policy that, at all times and in all circumstances, the tax system of the States shall not extend to Federal securities.

The next cases to be noted are : *Society for Savings* v. *Coite,* 6 Wall. 594 ; *Provident Insurance Co.* v. *Massachusetts,* 6 Wall. 611 ; and *Hamilton Company* v. *Massachusetts,* 6 Wall. 632.

In these cases this court affirmed the Supreme Courts of Connecticut and Massachusetts in holding that state taxes may be imposed, the amount of which may be determined by the ag-

gregate amount of the property or capital stock of banking and manufacturing companies, even if such property or capital stock includes United States bonds issued under a statute declaring them exempt from taxation under state authority.

As we have already seen, when referring to the state decisions, the reasoning upon which the state courts proceeded in the case of corporations was that such taxes were to be deemed as laid, not upon the bonds as property, but upon the franchise to do business as a corporation or association derived from the State. This reasoning was approved by this court; and it may be observed in passing that, as appears in the reports of the arguments of counsel, the contention so strongly pressed in the present case, namely, that under no form can Federal securities be practically rendered by state legislation less valuable, was fully argued. See also the case of *Scholey* v. *Rew*, 23 Wall. 331.

Next worthy of notice is the case of *Home Insurance Company* v. *New York*, 134 U. S. 594. It came here on error to the Supreme Court of the State of New York, whose judgment had been affirmed by the Court of Appeals, and was twice argued. The question considered was whether a statute of the State of New York was valid in respect to imposing a tax upon a New York corporation, measured and regulated by the amount of its annual dividends, where those dividends were partly composed of interest of United States bonds owned by the corporation.

As we have heretofore stated, the state courts answered this question in the affirmative, basing their decision upon the proposition that the tax was imposed as a tax upon corporate franchises or privileges, and that such a tax was not invalidated by the circumstance that the measure of its amount was fixed by the amount of the annual dividends of the company partly derived from the interest of United States bonds. 92 N. Y. 328.

In this court the question was elaborately argued, as may be seen in the first report of the case in 119 U. S. 129; and it was again contended that the case fell within the principle of public policy that the States have no power, by taxation or otherwise, to retard, impede, burden or in any manner control the opera-

tions of the instrumentalities of the national government, and also that the tax in question was repugnant to the Fourteenth Amendment of the Constitution of the United States.

The reasoning of the state court was substantially approved and their judgment, sustaining the validity of the state statute was affirmed. Some of the observations of the opinion of the court, delivered by Mr. Justice Field, may be appropriately quoted:

" Looking now at the tax in this case, we are unable to perceive that it falls within the doctrine of any of the cases cited, to which we fully assent, not doubting their correctness in any particular. It is not a tax in terms upon the capital stock of the company, nor upon any bonds of the United States composing a part of that stock. The statutes designate it a tax upon the 'corporate franchise or business' of the company, and reference is only made to its capital stock and dividends for the purpose of determining the amount of the tax to be exacted each year.

" By the term 'corporate franchise or business,' as here used, we understand is meant (not referring to corporations sole, which are not usually created for commercial business) the right or privilege given by the State to two or more persons of being a corporation, that is, of doing business in a corporate capacity, and not the privilege or franchise which, when incorporated, the company may exercise. The right or privilege to be a corporation, or to do business as such body, is one generally deemed of value to the corporators, or it would not be sought in such numbers as at present. It is a right or privilege, by which several individuals may unite themselves under a common name and act as a single person, with a succession of members, without dissolution or suspension of business, and with a limited individual liability. The granting of such right or privilege rests entirely in the discretion of the State, and, of course, when granted, may be accompanied with such conditions as its legislature may judge most befitting to its interests and policy. It may require, as a condition of the grant of the franchise, and also of its continued exercise, that the corporation pay a specific sum to the State each year or month, or a specific portion of its gross receipts, or of the profits of its business, or a sum to be

ascertained in any convenient mode which it may prescribe. The validity of the tax can in no way be dependent upon the mode which the State may deem fit to adopt in fixing the amount for any year, which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows. It may well seek in this way to increase its revenue to the extent to which it has been cut off by exemption of other property from taxation. As its revenues to meet its expenses are lessened in one direction, it may look to any other property as sources of revenue, which is not exempt from taxation. . . . The tax in the present case would not be affected if the nature of the property in which the whole capital stock is invested were changed, and put into real property or bonds of New York, or of other States. From the very nature of the tax, being laid upon a franchise given by the State, and revocable at pleasure, it cannot be affected in any way by the character of the property in which its capital stock is invested. The power of the State over the corporate franchise and the conditions upon which it shall be exercised is as ample and plenary in the one case as in the other."

And, after citing and commenting upon the previous cases from Connecticut and Massachusetts, the court said: "In this case we hold as well upon general principles as upon the authority of the first two cases cited from 6 Wallace, that the tax for which the suit is brought is not a tax upon the capital stock or property of the company, but upon its corporate franchise, and is not therefore subject to the objection stated by counsel, because a portion of its capital stock is invested in securities of the United States."

In *United States* v. *Perkins*, 163 U. S. 625, the question was whether personal property bequeathed by will to the United States was subject to an inheritance tax under the law of the State of New York.

The facts of the case were that one William W. Merriam, a resident of the State of New York, left a last will and testament, by which he devised and bequeathed all his estate, real and personal, to the United States. The surrogate assessed an

inheritance tax of $3964.23 upon the personal property included in said bequest. Upon appeal to the general term of the Supreme Court the order of the Surrogate's Court was affirmed, and upon a further appeal to the Court of Appeals the judgment of the Supreme Court was affirmed, and the cause was brought to this court.

It was contended that, upon principle, property of the United States was not subject to state taxation; but it was held by this court, affirming the judgment of the courts below, that the tax was not open to the objection that it was an attempt to tax the property of the United States, since the tax was imposed upon the legacy before it reached the hands of the legatee; that the legacy became the property of the United States after it had suffered a diminution to the amount of the tax, and that it was only upon such a condition that the legislature assented to a bequest of it.

The reasoning of the court may be manifested by the following excerpts from the opinion delivered by Mr. Justice Brown:

"Though the general consent of the most enlightened nations has from the earliest historical period recognized a natural right in children to inherit the property of their parents, we know of no legal principle to prevent the legislature from taking away or limiting the right of testamentary disposition, or imposing such conditions upon its exercise as it may deem conducive to public good. In this view the so-called inheritance tax of the State of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use; in other words, that the right to dispose of his property by will shall remain, but subject to a condition that the State has a right to impose. Certainly, if it be true that the right of testamentary disposition is purely statutory, the State has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee. This was the view taken of a similar

tax by the Court of Appeals of Maryland in *State* v. *Dalrymple,* 70 Maryland, 294, in which the court observed :

" ' Possessing, then, the plenary power indicated, it necessarily follows that the State in allowing property to be disposed of by will, and in designating who shall take such property where there is no will, may prescribe such conditions, not in conflict with or forbidden by the organic law, as the legislature may deem expedient. These conditions, subject to the limitations named, are, consequently, wholly within the discretion of the general assembly. The act we are now considering plainly intended to require that a person taking the benefit of a civil right secured to him under our law should pay a certain premium for its enjoyment. In other words, one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is, that there shall be paid out of such property a tax of two and a half per cent into the treasury of the State. This, therefore, is not a tax upon the property itself, but is merely the price exacted by the State for the privilege accorded in permitting property so situated to be transferred by will or by descent or distribution.'

" That the tax is not a tax upon the property itself, but upon its transmission by will or by descent, is also held both in New York and in several other States, *Matter of the Estate of Swift,* 137 N. Y. 77, in which it is said that the ' effect of this special tax is to take from the property a portion, or percentage of it, for the use of the State, and I think it quite immaterial whether the tax can be precisely classified with a taxation of property or not. It is not a tax on persons.' *Matter of Hoffman,* 143 N. Y. 237 ; *Schoolfeld's Executor* v. *Lynchburg,* 78 Virginia, 366 ; *Strode* v. *Commonwealth,* 52 Penn. St. 181 ; *In re Cullum,* 145 N. Y. 593. In this last case, as well as in *Wallace* v. *Myers,* 38 Fed. Rep. 184, it was held that, although the property of the decedent included United States bonds, the tax might be assessed upon the basis of their value, because the tax was not imposed upon the bonds themselves, but upon the estate of the decedent, or the privilege of acquiring property by inheritance.

*Eyre* v. *Jacob*, 14 Grattan, 422; Dos Passos on Inheritance Tax Law, chap. 2, and cases cited.

" Such a tax was also held by this court to be free from any constitutional objection in *Mager* v. *Grima*, 8 How. 490, Mr. Chief Justice Taney remarking that ' the law in question is nothing more than the exercise of the power which every State and sovereignty possesses, of regulating the manner and terms under which property, real and personal, within its dominion may be transferred by last will or testament, or by inheritance, and of prescribing who shall and who shall not be capable of taking it. . . . If a State may deny the privilege altogether, it follows that when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy.' To the same effect is *United States* v. *Fox*, 94 U. S. 315.

" We think it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is imposed upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and it is only upon this condition that the legislature assents to a bequest of it."

One of the propositions recognized in that case applicable to the present one is that a state tax that would be invalid if imposed directly on a legacy to the United States, may be valid if the amount of the tax is taken out of the legacy before it reaches the hands of the government—the theory of such a view apparently being that the property rights of the government do not attach until after the tax has been paid, or until the condition imposed by the tax law of the State has been complied with. Such is also the case in respect to the legacy to Ella Plummer Brown, as the statute in question distinctly makes it the duty of the executor to pay the amount of the tax before the legacy passes to the legatee.

In *New York* v. *Roberts*, 171 U. S. 658, an effort was made to have a tax imposed against corporations based upon " capital employed within the State " declared invalid, in that partic-

ular case, because a portion of such capital consisted of imported goods in original packages; and this court said:

"Again it is said that, assuming that the importation of crude drugs and their sale in the original packages constituted a portion of the corporate business, no tax could be imposed by the State under the doctrine of *Brown* v. *Maryland,* 12 Wheat. 419. But that case is inapplicable. Here no tax is sought to be imposed directly on imported articles or on their sale. This is a tax imposed on the business of a corporation, consisting in the storage and distribution of various kinds of goods, some products of their own manufacture and some imported articles. From the very nature of the tax, being laid as a tax upon the franchise of doing business as a corporation, it cannot be affected in any way by the character of the property in which its capital stock is invested."

In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, the validity of the inheritance tax law of Illinois was assailed because of inequalities and discriminations so great as to amount to a deprivation of property and to a denial of the equal protection of the laws. The law in question had been upheld by the Supreme Court of the State in the case of *Kochersperger* v. *Drake,* 167 Illinois, 122, hereinbefore referred to.

This court held that the law was one within the competency of the legislature of the State to make, and that it did not conflict in anywise with the provisions of the Constitution of the United States. In the course of the discussion, Mr. Justice McKenna, who delivered the opinion of the court, said:

"The constitutionality of inheritance taxes has been declared and the principles upon which they are based explained in *United States* v. *Perkins,* 163 U. S. 325; *Strode* v. *Commonwealth,* 52 Penn. St. 181; *In re Merriam,* 141 N. Y. 479; *Minot* v. *Winthrop,* 162 Mass. 113; and in *Scholey* v. *Rew,* 23 Wall. 331.

"It is not necessary to review these cases, or state at length the reasoning by which they are supported. They are based on two principles: 1. An inheritance tax is not one on property, but one on the succession. 2. The right to take property by devise or descent is the creature of the law, and not a natural

right or privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the States may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective state constitutions requiring uniformity and equality of taxation."

In closing our review of the Federal decisions the case of *Wallace* v. *Myers*, 38 Fed. Rep. 184, may be properly referred to, especially as it has been cited with approval by this court in *United States* v. *Perkins*, 163 U. S. 625, 629.

The question involved was the very one we are now considering, namely, the validity of the inheritance tax law of the State of New York when applied to a legacy consisting of United States bonds. In his opinion Circuit Judge Wallace reviewed many of the state and Federal decisions heretofore referred to, and reached the conclusion that the tax was to be regarded as imposed, not on the bonds, but upon the privilege of acquiring property by will or inheritance, and that where the property of the decedent included United States bonds, the tax may be assessed upon the basis of their value.

We think the conclusion, fairly to be drawn from the state and Federal cases, is, that the right to take property by will or descent is derived from and regulated by municipal law; that, in assessing a tax upon such right or privilege, the State may lawfully measure or fix the amount of the tax by referring to the value of the property passing; and that the incidental fact that such property is composed, in whole or in part, of Federal securities, does not invalidate the tax or the law under which it is imposed.

Passing from the authorities, let us briefly consider some of the arguments advanced in the able and interesting brief filed in behalf of the plaintiff in error.

The propositions chiefly relied on are, first, that an inheritance tax, if assessed upon a legacy or interest composed of United States bonds, is within the very letter of the United States statute which declares that such bonds "shall be exempt from taxation in *any form* by or under state, municipal or local

authority ; " and, second, that the tax in question is unconstitutional, because impairing and burdening the borrowing power of the United States.

But if the first proposition is sound and decisive of the question in this case, then it must follow that the cases in which this court has held that, in assessing a tax upon corporate franchises, the amount of such a tax may be based upon the entire property or capital possessed by the corporation even when composed in whole or in part of United States bonds, must be overruled. Plainly in those cases, as in this, there was taxation *in a form,* and in them as in this the amount of the tax was reached by including in the assessment United States bonds.

So that we return to the authorities, by which it has been established that a tax upon a corporate franchise, or upon the privilege of taking under the statutes of wills and of descents, is a tax not upon United States bonds if they happen to compose a part of the capital of a corporation or a part of the property of a decedent, but upon rights and privileges created and regulated by the State.

The second proposition relied on, namely, that to permit taxation of the character we are considering would operate as a burden upon the borrowing power of the United States, cannot be so readily disposed of.   Still, we think, some observations can be made which will show that the mischief, which it is claimed will follow if such statutes be sustained as valid, is by no means so great or important as supposed.

And here, again, it is obvious that to affirm the second proposition will require an overruling of our previous cases.   For, on principle, if a tax on inheritances, composed in whole or in part of Federal securities, would, by deterring individuals from investing therein, and, by thus lessening the demand for such securities, be regarded as therefore unlawful, it must likewise follow that, for the same reasons, a tax upon corporate franchises measured by the value of the corporation's property, composed in whole or in part of United States bonds, would also be unlawful.

To escape from this conclusion, it is contended, in the argument of the plaintiff in error, that, conceding that such taxes

may be valid as imposed on corporate franchises, and permitting our decisions in such cases to stand, yet that the case of the estates of decedents is different; that individual persons will be driven to consider, when making their investments, whether they can rely on their legatees or heirs receiving United States bonds unimpaired by state action in the form of taxation; and that if it should be held by this court that such taxation is lawful, capital would not be invested in United States bonds on terms as favorable as if we were to hold otherwise.

This is only to state the proposition over again. For, if it were our duty to hold that taxation of inheritances, in the cases where United States bonds pass, is unlawful because it might injuriously affect the demand for such securities, it would equally be our duty to condemn all state laws which would deter those who form corporations from investing any portion of the corporate property in United States bonds.

In fact, the mischief, if it exists at all and is not merely fanciful, might be supposed to be much greater in the case of state laws taxing franchises than the case of taxing the estates of decedents. So small now is the income derivable from Federal securities that few individuals, and those only of great wealth, can afford to invest in them; and the demand for them is mostly confined to banking associations and to large trading and manufacturing companies which invest their surplus in securities that can be readily and quickly converted into cash. Moreover, no inconsiderable portion of the United States loans is taken and held, as every one knows, in foreign countries, where doubtless it is subjected to municipal taxation.

While we cannot take judicial notice of the comparative portions of the government securities held by individuals, by corporations and by foreigners, we still may be permitted to perceive that the mischief to our national credit, so feelingly deplored in the briefs, caused by state taxation upon estates of decedents, would be inappreciable, and too remote and uncertain to justify us now in condemning the tax system of the State of New York.

It is further contended that there is a vital difference between the individual and the corporation; that the individual exists,

and carries on his operations under natural power and of common right, while the corporation is an artificial being, created by the State and dependent upon the State for the continuance of its existence, and subject to regulations and to the imposition of burdens upon it by the State, not at all applicable to natural persons.

Without undertaking to go beyond what has already been decided by this court in *Mayer* v. *Grima*, 8 How. 490, in *Scholey* v. *Rew*, 23 Wall. 331, and in *United States* v. *Perkins*, 163 U. S. 625, and in the other cases heretofore cited, we may regard it as established that the relation of the individual citizen and resident to the State is such that his right, as the owner of property, to direct its descent by will, or by permitting its descent to be regulated by the statute, and his right, as legatee, devisee or heir, to receive the property of his testator or ancestor, are rights derived from and regulated by the State, and we are unable to perceive any sound distinction that can be drawn between the power of the State in imposing taxes upon franchises of corporations, composed of individual persons, and in imposing taxes upon the right or privilege of individuals to avail themselves of the right to grant and to receive property under the statutes regulating the descent of the property of decedents. And, at all events, the mischief apprehended, of impairing the borrowing power of the government by state taxation, is the same whether that taxation be imposed upon corporate franchises or upon the privilege created and regulated by the statutes of inheritance.

Again, it is urged that the pecuniary amount of the state tax which is to be set aside is of no legal consequence; that any amount, however inconsiderable, is an interference with the constitutional rights of the United States, and must therefore be annulled by the judgment of this court. Of course, nobody would attempt to affirm that an unconstitutional tax could be sustained by claiming that, in a particular case, the tax was insignificant in amount.

But when the effort is made, as is the case here, to establish the unconstitutional character of a particular tax by claiming

that its remote effect will be to impair the borrowing power of the government, courts in overturning statutes, long established and within the ordinary sphere of state legislation, ought to have something more substantial to act upon than mere conjecture. The injury ought to be obvious and appreciable. It may be opportune to mention that, even while we have been considering this case, the United States government has negotiated a public loan of large amount at a lower rate of interest than ever before known. From this it may be permissible to infer that the existence of legislation, whether state or Federal, including Federal securities as part of the mass of private property subject to inheritance taxes, has not practically injured or impaired the borrowing power of the government.

The contention of the plaintiff in error that taxation of the estates of decedents, in any form, and however slight, is invalid, if United States bonds are included in the appraisement, seems to be unreasonable. Suppose a decedent's estate consisted wholly of United States securities, could it reasonably be claimed that the charges and expenses of administration, imposed under the laws of the State, would not be payable out of the funds of the estate? If the estate were a small one, such expenses might require the application of all the Federal securities. If the estate were a large one, the expenses attendant upon administration would be proportionately large, to be raised out of the Federal securities. It is not sufficient to say that such expenses are in the nature of statutory debts, and that the question of the exemption of United States bonds cannot arise until after the debts of the estate shall have been paid. For, after all, what is an inheritance tax but a debt exacted by the State for protection afforded during the lifetime of the decedent? It is often impracticable to secure from living persons their fair share of contribution to maintain the administration of the State, and such laws seem intended to enable to secure payment from the estate of the citizen when his final account is settled with the State. Nor can it be readily supposed that such obligations can be evaded or defeated by the particular form in which the property of the decedent was invested.

Upon the whole, we think that the decision of the courts below was correct, and the judgment is therefore

*Affirmed.*

MR. JUSTICE WHITE dissented.

MR. JUSTICE PECKHAM took no part in the decision.