# Richmond.

## THOMAS F. JEFFRESS, EXECUTOR OF THE WILL OF CELIA LYNDS, DECEASED v. COMMONWEALTH OF VIRGINIA AND C. LEE MOORE, AUDITOR, ETC.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*R. Grayson Dashiell* and *John P. McGuire, Jr.*, for the plaintiff in error.

*W. W. Martin* and *Henry R. Miller, Jr.*, for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The judge of the trial court, the Honorable Julien Gunn, has sufficiently stated the controlling facts of this case, and as we agree with his conclusions we adopt and reproduce his opinion.

"Celia Lynds, a subject of Great Britain and a resident of England, died on the 27th day of October, 1926, leaving a last will and testament, whereby she bequeathed to her executor, Thomas F. Jeffress, a resident and citizen of the Commonwealth of Virginia, stocks and bonds and cash in bank aggregating $139,-519.50. Among the securities were bonds of the United States government, consisting of $20,000.00 of the First Liberty Loan, $15,000.00 of the Second Liberty Loan, and $5,000.00 of the Third Liberty Loan.

"C. Lee Moore, Auditor of Public Accounts of Virginia, by virtue of the authority vested in him under section 44½ of the Tax Bill, as amended by chapter 460 of the Acts of the General Assembly of Virginia, approved March 27, 1922, assessed all of the

personal property bequeathed to the executor with the exception of the money in bank, aggregating a tax of $2,790.39, which tax was paid under protest by the executor. Subsequently thereto, the said executor withdrew his protest against the payment of $1,983.64, representing a two per cent. inheritance or transfer tax on the value of all the securities of the testator, with the exception of the Liberty Loan bonds hereinbefore specified.

"On October 10, 1927, the executor filed his petition in this court praying that he be refunded the sum of $806.75, representing the two per cent. inheritance or transfer tax on the United States Liberty Loan bonds, their market value being $40,337.50, alleging that the imposition of the tax was repugnant to and contravened the Constitution of the United States.

"This matter has been fully argued by counsel for the said executor and for the State Tax Board, respecttively, and submitted to the court for its judgment.

"The court is now called upon to determine the question whether, under the inheritance or transfer tax laws of Virginia, a tax may be validly imposed on a subject, consisting of United States bonds, when a statute of the United States declares them to be exempt both as to principal and interest, from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States, or by any local taxing authorities.

"Under an act of Congress (31 U. S. C. A. section 750), 'notes and certificates of indebtedness of the United States while beneficially owned by a nonresident alien individual, or a foreign corporation, partnership, or association engaged in business in the United States, are exempt, both as to principal and interest, from any and all taxation now or hereafter

imposed by the United States, any State, or any of the possessions of the United States, or by any local authority.'

■ "It is not open to question that a State cannot, in the exercise of the power of taxation, tax obligations of the United States. *Home Insurance Company* v. *New York*, 134 U. S. 594, 598, 10 S. Ct. 593, 33 L. Ed. 1025.

■ "It has been uniformly held by the courts of last resort of the States in the Union in which the question has been raised, that it is competent for the legislature of the State to impose a tax upon the franchises of corporations of the State, and upon the estates of decedents, and in assessing such taxes, and as a basis to establish such assessments, to include the entire property of such corporations and decedents, although composed in whole or in part of the United States bonds; and that such taxes are to be regarded as imposed, not upon the property passing by will, but upon the right or privilege to transfer by will or under the intestate law of the State.

■ "Whether these laws are regarded as limitation on a right of a testator to dispose of property by will, or upon the right of devisees to take under a will, is immaterial.

"The so-called tax is an exaction made by the Commonwealth in the regulation of the right of devolution of property of decedents, which is created by law, and which the law may restrain or regulate.

■ "Whatever the form of the property, the right to succeed to it is created by law, and if the property consists of governmental securities, the transferee derives his right to take them, as he does his right to take any other property of the decedent, under the laws of the State, and the State, by its statute, makes the right subject to the burden imposed.

"*Commonwealth* v. *Provident Institution*, 12 Allen (Mass.) 312; *Commonwealth* v. *Hamilton Company*, 12 Allen (Mass.) 298, 300; *Coite* v. *Society for Savings*, 32 Conn. 173; *Clymer* v. *Commonwealth*, 52 Pa. St. 181, 186; *Eyre* v. *Jacob*, 14 Gratt. (55 Va.) 422, 73 Am. Dec. 367; *Miller's Ex'r* v. *Commonwealth*, 27 Gratt. (68 Va.) 110; *Kochersperger* v. *Drake*, 167 Ill. 122, 47 N. E. 321, 41 L. R. A. 446; *People of New York* v. *Home Ins. Co.*, 92 N. Y. 328; *Matter of Sherman*, 153 N. Y. 1, 46 N. E. 1032.

■ "The decisions of the various State courts upholding the validity of the imposition of the transfer tax are fully summarized in the case of *Plummer* v. *Coler*, 178 U. S. page 117, 20 S. Ct. 829, 44 L. Ed. 998, *et seq.* Justice Shiras, quoting with approval the language of Chief Justice Taney in the case of *Mager* v. *Grima*, 8 How. 493, 12 L. Ed. 1168, said: 'Now the law in question is nothing more than an exercise of the power which every State and sovereignty possesses of regulating the manner and terms upon which property, real or personal, within its dominion may be transmitted by last will and testament, or by inheritance, and of prescribing who shall and who shall not be capable of taking it * * * and if a State may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy.'

"The law enacted by the State of New York, which was involved in the case of *Plummer* v. *Coler*, was asserted to be in violation of the act of Congress which declared that 'such bonds shall be exempt from taxation in any form by or under State, municipal, or local authority,' and therefore was unconstitutional because impairing and burdening the borrowing power of the United States. It will be seen that the wording of the

act of Congress is practically identical with the act of Congress invoked by the petitioner in this cause.

"I am, therefore, of the opinion that the conclusion fairly to be drawn from the State and Federal cases is, that the right to take property by will or descent is derived from and regulated by municipal law; that in assessing the tax complained of the Commonwealth was clearly within its power to fix the amount of tax to be imposed upon personal property of non-residents when such property is within the confines of the Commonwealth, and that the incidental fact that such property is composed in whole or in part of Federal securities does not invalidate the tax or the law under which it is imposed, and such law is not repugnant to or in contravention of the United States Constitution or laws made in pursuance thereof."

Unless the case of *Plummer* v. *Coler*, 178 U. S. 117, 20 S. Ct. 829, 44 L. Ed. 998, is to be disregarded and discredited, it is conclusive of the issue here raised. The exempting clause construed in that case, as it seems to us, is perhaps more comprehensive than in the case at bar. It is, referring to United States bonds, that "such bonds shall be exempt from taxation in any form by or under State, municipal, or local authority," whereas in the act here relied on ( U. S. Anno. Stat. 1923 Supp., section 6829-iii [31 U. S. C. A., section 753]; act of March 3, 1919, chapter 100, section 4 [31 U. S. C. A., section 750]), which was adopted after the bonds here involved had been issued by the Federal government, the language used is that " 'Notwithstanding the provisions of the Second Liberty Bond act, or of the War Finance Corporation act, or of any other act, bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a non-

resident alien individual, or a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States, or by any local taxing authority.''

It is, then, a condition of this latter exemption that the bonds be beneficially owned by a non-resident alien individual. This condition does not appear. The legal title to these bonds is in the executor of the will of Celia Lynds, who is a resident of Virginia and qualified in one of the courts of Virginia, while the beneficial ownership is in her legatees, subject to the expense of administration and her debts. The beneficial owner-ship and legal rights of Celia Lynds, the decedent, certainly ended at her death, and the transfer tax is not a charge against her. Without reference to any questions of conflict between State and Federal power, even under the language of the Federal statute, this record fails to show that the bonds, at the time the transfer tax was imposed, were owned by a non-resident alien individual. Certainly, if the Congress has the disposition and power to change the rule so long approved and enforced in *Plummer* v. *Coler*, *supra*, it should express its purpose by clearer language than that employed in the act relied on, and if that case is to be discredited, it should be by the Supreme Court of the United States and for some better reason than this record discloses.

*Affirmed.*