CHARLES H. NETTLETON, EXECUTOR, APPEAL FROM PROBATE.

76 235
76 620
76 627
76 235
f77 648

\* First Judicial District, Hartford, October Term, 1903..

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The exaction of some form of death duty has existed from ancient times as an established and well known mode of taxation, and the right to impose such duties was therefore included in the broad power of taxation vested by our Constitution in the General Assembly.

---

\* Transferred from third judicial district.

With the exception of the rule of apportionment in laying direct taxes, and of geographical uniformity in laying indirect taxes, contained in the Federal Constitution, there is no provision either in that instrument or in the Constitution of this State which defines or limits the method or manner in which the power of taxation may be exercised by the legislative department. Accordingly, a statute of this State imposing taxes is not to be adjudged unconstitutional because it happens, under certain circumstances, to bear unequally, or because its classification is arbitrary, provided it does not violate some independent constitutional prohibition or restraint.

While the succession tax law, so-called (General Statutes, §§ 2367 to 2377), in imposing death duties, makes an arbitrary distinction between estates of $10,000 and those of a greater amount, so that a legacy in an estate of $10,000 or less pays no tax, while a legacy of the same amount in an estate of more than $10,000 is taxed, yet the Act is not unconstitutional upon that ground, since it is obvious that such distinction is a mere incident to the operation of a statute enacted solely for the purposes of taxation, and is not an attempt, either in form or substance, to exercise the power of hostile discrimination against any class of citizens which is forbidden alike by the State and Federal constitutions.

Argued October 14th—decided December 18th, 1903.

APPEAL from an order and decree of the Court of Probate for the district of Meriden fixing the amount of an inheritance tax and directing its payment to the State, taken to the Superior Court in New Haven County and reserved by that court, *George W. Wheeler*, *J.*, for the advice of this court. *Superior Court advised to dismiss the appeal.*

The Court of Probate for said district of Meriden made the following order: —

"Estate of Owen B. Arnold, late of Meriden, in said district, deceased.

"It appearing to the court from the inventory of the above estate that the total property of said estate at the time of said inventory was as follows, to wit:

Real estate, . . . . . . $8,900.00
Personal property, . . . . 242,738.87
· Total, . . · . . . $251,638.87

"And it further appearing that for the purpose of fixing

the inheritance tax upon said estate the amount of said inventory is subject to the following deductions :

| | | |
|---|---|---|
| (*a.*) Foreign assets, | . . . . | $75,832.00 |
| (*b.*) Statutory exemption, | . . . | 10,000.00 |
| (*c.*) Debts and expenses of administration, | | 9,121.13 |
| (*d.*) United States internal revenue tax, | | 4,492.78 |
| Total, | . . . . . . | $99,445.91 |

leaving a balance subject to the inheritance tax of $152,192.96.

"And it further appearing that the legacies given under said will are to St. Andrew's parish, Meriden," etc.; "and that none of said legatees are within the relation of parent, husband, wife, lineal descendant, or legally adopted child of the testator.

"And it further appearing that by the provisions of section 2368 of the General Statutes of Connecticut, Revision of 1902, all of such legacies are subject to a succession tax of 3 per cent. of their value.

"Now, therefore, it is hereby ordered that Charles H. Nettleton, executor under the will of said Owen B. Arnold, shall forthwith pay to the Treasurer of the State of Connecticut the sum of $4,565.79, being the amount of said succession tax, together with interest thereon at the rate of 9 per cent. per annum from the 12th day of September, 1901, being one year after the qualification of such executor, said interest amounting to $674.39."

The material sections of the General Statutes governing this action of the Court of Probate are given in the note.*

---

* § 2367. The estate of every deceased person, to the amount of ten thousand dollars, and, in addition to said amount, all gifts of paintings, pictures, books, engravings, bronzes, curios, bric-a-brac, arms, and armor, and collections of articles of beauty or interest, made by will to any corporation or institution located in this state for free exhibition and preservation for public benefit, shall be exempt from payment of any succession tax ; and, after deducting ten thousand dollars and all such gifts for free public exhibition, the rest of the estate of every deceased person shall be subject to the taxes in § 2368 provided.

§ 2368. In all such estates any property within the jurisdiction of

The executor appealed from this order to the Superior Court. His reasons of appeal consist of an allegation that the legislative Act, under which the Court of Probate di-

this state, and any interest therein, whether tangible or intangible, and whether belonging to parties in this state or not, which shall pass by will or by the inheritance laws of this state to the parent or parents, husband, wife, or lineal descendants, or legally adopted child of the deceased person, shall be liable to a tax of one-half of one per cent. of its value for the use of the state ; and any such estate or interest therein which shall so pass to collateral kindred, or to strangers to the blood, or to any corporation, voluntary association, or society, shall be liable to a tax of three per cent. of its value for the use of the state. All executors and administrators shall be liable for all such taxes with interest thereon at the rate of nine per cent. per annum, from the time when said taxes shall become payable until the same shall have been paid as hereinafter directed.

§ 2369. The court of probate having jurisdiction of the settlement of any estate shall, within ten days after the filing of a will or the application for letters of administration, if in its opinion said estate exceeds in value said sum of ten thousand dollars, send to the treasurer of the state a certificate of the filing of such will or application, and shall within ten days after the return and acceptance of the inventory and appraisal of any such estate send a certified copy of said inventory and appraisal to the treasurer of the state, together with his certificate as to the correctness in his opinion of said inventory and appraisal ; and if no new appraisal is made as hereinafter provided the valuation therein given shall be taken as the basis for computing said taxes. The said court of probate shall, on the application of the treasurer of the state, or any person interested in the succession thereof, and within four months after granting administration, appoint three disinterested persons who shall view and appraise such property at its actual value for the purposes of said tax, and make return thereof to said court, and on the acceptance of said return, after public notice and hearing, the valuation therein made shall be binding upon the persons interested and upon the state. If any executor or administrator shall neglect or refuse to return an inventory and appraisal within the time now required by law, unless said time shall have been extended by said court for cause, after hearing and such notice as the court of probate may require, the said court of probate may remove said executor or administrator, and appoint another person administrator with the will annexed, or administrator, as the case may be.

§ 2371. Where any estate or an annuity is bequeathed or devised to any person for life or any limited period, with remainder over to another or others, and all the beneficiaries are within the same class, the tax shall be computed on, and paid as aforesaid out of, the principal sum of property so bequeathed or devised. Where a life estate or

rected the executor to pay the succession tax in question, is null and void; and assigns four grounds of invalidity. These grounds, briefly stated in their appropriate order, are:

an annuity is bequeathed or devised to a parent or parents, husband, wife, or lineal descendants, and remainder over to collateral kindred, or to strangers to the blood, or to a corporation, voluntary association, or society, then the tax of one-half of one per cent. shall be paid out of the principal sum or estate so bequeathed or devised for life, or constituting the fund producing said annuity, and the remaining two and one-half per cent. due from collateral kindred or strangers to the blood shall be paid out of the said principal sum or estate at the expiration of the particular estate or annuity. And where a life estate or annuity is bequeathed or devised to collateral kindred or strangers to the blood, or to a corporation, voluntary association, or society, with remainder to parent, or parents, husband, wife, or lineal descendants, or legally adopted child, a tax of three per cent. shall be paid as aforesaid to the treasurer of the state out of the principal sum or estate, or fund producing said annuity ; on the termination of said life estate or annuity the treasurer of the state shall refund and pay to the person or persons entitled to the remainder five-sixths of said tax. The said court of probate shall send to the treasurer of the state a certificate of the date of the death of said life tenant or annuitant within ten days after the same has come to its knowledge.

§ 2372. All administrators or executors shall have power to sell so much of the estate as will enable them to pay said tax. In case specific estate or property is bequeathed or devised to any person, unless the legatee or devisee shall pay to the executor the amount of the tax due thereon by the provisions of § 2368, the executor shall sell said property or so much thereof as may be necessary to pay said tax and the fees and expenses of said sale.

§ 2374. The court of probate, having either principal or ancillary jurisdiction of the settlement of the estate of the decedent, shall have jurisdiction to hear and determine all questions in relation to said tax that may arise affecting any devise, legacy, or inheritance under § 2368, subject to appeal as in other cases, and the state treasurer shall represent the interests of the state in any such proceeding.

§ 2375. No final settlement of the account of any executor or administrator shall be accepted or allowed by any court of probate unless it shall show, and the judge of said court shall find, that all taxes, imposed by the provisions of § 2368 upon any property or interest belonging to the state to be settled by said account, shall have been paid, and the receipt of the treasurer of the state for such tax shall be the proper voucher for such payment.

§ 2377. Sections 2367 to 2376, both inclusive, shall not apply to the estates of any persons deceased before June first, 1897 ; but the estates of all persons who died before July first, 1893, and on or after August

(1) The Act exceeds the legislative power of taxation.
(2) The Act violates the Fourteenth Amendment of the
Constitution of the United States.    (3) The Act transcends
the limitations arising from those fundamental conceptions
of free government which underlie all constitutional systems.
(4) The Act violates the fundamental principles of the
social compact.

The State treasurer appeared on behalf of the State and
demurred to the reasons of appeal.

Upon stipulation and agreement of the parties the Supe-
rior Court reserved the questions of law arising in said cause,
and upon the appellant's reasons of appeal, and the appellee's
demurrer, and what judgment should be rendered, for the
advice of this court.

*Edward A. Harriman*, for Charles H. Nettleton, executor.

*Donald T. Warner* and *William A. King*, Attorney-General,
for the State.

HAMERSLEY, J.    Are §§ 2367 to 2377 inclusive, of the
General Statutes, which constitute the Act of the legislature
under which the decree of the Court of Probate was passed,
null and void, for any one of the reasons assigned by the
appellant?

If the Act exceeds the legislative power of taxation, it
violates the provisions of our State Constitution; it is not
law ; the person subjected to such taxation is deprived of his
property by a means not clearly warranted by the law of the
land, that is, without due process of law, and the person thus
deprived of property without due process of law may invoke
the national protection afforded through the Fourteenth

first, 1889, shall be subject to the provisions of chapter 180 of the pub-
lic acts of 1889 ; and the estates of all persons who died before June
first, 1897, and on or after July first, 1893, shall be subject to the pro-
visions of said chapter 180 as modified by chapter 257 of the public
acts of 1893.   Said chapters 180 and 257 are continued in force for the
purposes in this section expressed.

Amendment; and so the first and second grounds of invalidity are closely related and may more conveniently be treated as one ground.

The Act may exceed the legislative power of taxation because the particular exaction imposed is not within the scope of that power as vested in the General Assembly by the Constitution, or because the Act, in laying a tax within the scope of that power, lays it in such manner or for such purpose as to violate some provision or limitation of the Constitution.

The Act imposes death duties and prescribes their amount and the machinery convenient for their collection. A tax of this kind has been defined as " an exaction made by the State in the regulation of the right of devolution of property of decedents, which is created by law, and which the law may restrain or regulate." *In the Matter of Sherman*, 153 N. Y. 1, 4.

Some form of death duty has been used as a mode of taxation from ancient times. When the Constitution of the United States was adopted death duties had been in use in England, as well as elsewhere, and were an established mode of taxation known to the people, who, in the exercise of the sovereignty vested in them, enacted that fundamental law. The imposition of death duties must therefore have been included in the broad power of taxation granted to the legislature by the Constitution. This is true of the Constitution of our State.

Soon after the organization of the Federal government Congress imposed death duties, and has used this mode of taxation at intervals until the present time. The same mode of taxation has been practiced by many of the State legislatures.

Such laws have been frequently attacked as unconstitutional, but their validity is too firmly established by many decisions to be now questioned. It is sufficient to refer to the leading case of *Knowlton* v. *Moore*, 178 U. S. 41. In the opinion announced by Mr. Justice White the whole subject is discussed with exhaustive fullness, and the proposition that death duties are an established mode of taxation and

clearly within the power of taxation granted to the legislature is demonstrated.

If, therefore, the Act under discussion exceeds the legislative power, it must be because in the manner of laying the tax or the purpose of its imposition some provision of our Constitution is violated. The only provision of our Constitution to which this Act can be claimed to be obnoxious, is that which results by clear implication from the declaration of rights contained in Article I, and which secures to every citizen equal protection in the enjoyment of those civil rights common to all, and which stamps with invalidity laws which select any person or persons for gratuitous privileges or for arbitrary and hostile discrimination in the imposition of burdens or limitations on their harmless action. *State* v. *Conlon*, 65 Conn. 478, 489.

The constitutions of many of the States contain, in some form, the maxim " taxation should be equal and uniform." This maxim may be apposite and useful if addressed to the conscience and judgment of legislators in exercising the power of taxation, but when it was incorporated into a constitution as a limitation on that power, which courts might be called upon to interpret and enforce, it became a fruitful source of litigation which taxed the ingenuity of courts. This difficulty was most keenly felt when courts were called upon to reconcile the unquestioned power of taxation, through the imposition of death duties, with the constitutional provision requiring uniformity and equality in taxation. Such legislation generally involved, and in some instances to a marked degree, the violation of the rule of uniformity in rate and of equality in operation. The difficulty was overcome partly through an application of the theory, found useful in other tax troubles, that the rule of equality did not apply to the people as a whole, or to property in general, but only to persons and property after they had been classified for purposes of taxation.

More reliance, however, was placed upon the theory that imposition of death duties is not taxation within the meaning of the troublesome maxim ; that inasmuch as the process by

which the State assumes the care of property upon the death of its owner and secures its distribution to the objects designated by him in his will, or to the persons designated by the law of intestacy, is the creature of statute, which the State may alter or abrogate at pleasure, therefore the power of its owner to so transfer property, through his death, and of his legatee or the distributee of his estate to so receive the property, is a privilege granted by the State, which may properly dictate the terms on which the privilege may be enjoyed. Upon this theory, laws for collecting taxes by way of death duties, which disregard uniformity in rate and involve gross inequality in operation, have been held valid by courts of last resort in States whose constitutions require uniformity and equality in taxation.

Upon appeal in such a case the United States Supreme Court has not questioned this interpretation by State courts, and, accepting that interpretation, has held that the State tax involving the greatest inequality was not obnoxious to the Fourteenth Amendment, because the State Constitution contained no provision prohibiting the exercise of taxation in this manner. *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283.

Such considerations are of comparatively slight importance in determining the validity of a tax imposed by the United States Congress or by the General Assembly of this State. With the exception of the rule of apportionment in laying direct taxes, and of geographical uniformity in laying indirect taxes, prescribed for Congress, neither the Constitution of the United States nor that of this State adopts any maxim prescribing or defining the manner of taxation for the purpose of thus limiting, through constitutional prohibition, the exercise of that power; neither Constitution contains the general maxim, "taxation must be uniform and equal." And so when the validity of an Act of Congress imposing death duties is challenged, the Federal court is not concerned with the unequal operation of the law, unless as a consideration throwing light on the intention of the legislature in using language of a doubtful

meaning; as where one construction would increase a gross inequality in operation to an inequality so profound that a court would not be justified in an inference of such legislative intent not expressed in language too clear to permit any reasonable doubt.

It is not concerned with that distinction between death duties and other forms of taxation relied upon by State courts, in excepting this form of taxation from a constitutional rule of equality, for Congress did not make, and cannot alter, the statutes conferring the privilege of transferring or receiving property through will or intestacy, upon the death of its owner. *Knowlton* v. *Moore*, 178 U. S. 41.

It is concerned with these questions: Are death duties taxation within the power granted to the legislature? If so, is this particular tax so laid as to be obnoxious to some independent provision of the Constitution, as, for instance, the one clearly implied from the relations between the National and State governments, which forbids the one to tax governmental means essential to the existence of the other; or is it laid with the purpose and effect of invading some right of person or property guaranteed by the Constitution?

In *Black* v. *State*, 113 Wis. 205, the case mainly relied upon by the executor, the court was clearly influenced, not only in its decision of the points involved but also in the collateral discussion, by a provision in the Wisconsin Constitution commanding the legislature to so exercise its granted power of taxation that all taxation should be uniform and equal; a provision which to this extent subjected the legislative discretion to judicial control. There is no occasion to comment on the departure from lines of construction, followed by courts in some other States whose constitutions contain a similar provision, which is indicated in the opinions of the judges concurring in the results reached in this case.

The grounds on which the Act of Congress of 1898, imposing death duties, was held valid in *Knowlton* v. *Moore*, 178 U. S. 41, demonstrate the validity of our State law

under discussion. It is, however, seriously claimed that the State law is obnoxious to the provision of our State Constitution above mentioned, and therefore we will consider that claim.

Plainly the provision is not violated unless the Act selects some person or persons for arbitrary or hostile discrimination in the imposition of burdens. The Act imposes an indirect tax or duty of the kind known as death duties; that is, an exaction to be paid to the State upon the occasion of death and the consequent transfer of ownership in the property of the decedent, through the intervening custody and administration of the law, to the persons designated by the law, through the statutes regulating wills, descents, and distribution. Such exaction is due and collectible during the interim that the property is in the custody of the law; that is, after death has destroyed the possession of its owner and before final possession is given to the new owners designated by the law.

If the tax is laid upon the property after it has passed into the possession of the new owner, to be paid by him, it is not a death duty but a tax on property. It is evident that all death duties are an exaction taken from the estate of a decedent in the custody of the law, and that the stress of the tax must fall in some form, and more or less directly, on those who receive, at the hands of the law, the estate thus depleted. It is immaterial to the essence of this tax how its amount is computed; whether by one calculation upon the whole estate flowing to all beneficiaries, or through several calculations upon separate, distinct portions of the estate flowing to distinct beneficiaries. However computed, the tax is an exaction from the estate of the decedent, the stress of which incidently falls on the legatees or distributees with more or less equal or unequal burden, according to the policy adopted by the State in fixing the scope of the exaction, the mode of ascertaining its amount, and of enforcing its collection.

Nor is it material to the essence of the tax at what time it is ascertained and collected during the passage of the

property, through the channel of the law, from the dead to
the living; whether the property is tapped as it falls from
the lifeless hand, or midway in its course, or as it passes in-
to the grip of the new owner; whether it is called a probate,
a succession, or a legacy tax.   Such nomenclature is con-
venient; its distinctions may be important for clear discus-
sion of the policy of death duties and the mode of using this
form of taxation, and an accurate conception of them may
serve to throw light upon the actual intent of the legislature,
when language of doubtful meaning is used, in determining
the amount and manner of enforcing the tax.   But they are
of no practical importance in this case, and we do not con-
sider the questionable claim that the Act before us imposes
a legacy tax as distinguished from a tax on the estate.   It
may be conceded, for the purposes of argument, that the
duty imposed is more accurately termed a legacy tax.

Stripped of matter immaterial to the present case, the Act
reads as follows : In all estates any property which shall pass
by will or by inheritance laws to lineal descendants, shall
be liable to a tax of one half of one per cent. of its value for
the use of the State ; and any property which shall so pass
to collateral kindred, shall be liable to a tax of three per
cent.   All administrators shall be liable for such taxes to
be paid within one year after their qualification, with inter-
est thereon at the rate of nine per cent. per annum, after said
taxes are due.   The estate of every deceased person to the
amount of $10,000 shall be exempt from payment of any
succession tax ; and, after deducting $10,000, the rest of the
estate of every deceased person shall be subject to the taxes
above provided.

The practical effect of the Act, as construed by the ap-
pellant, is this : A legacy of $1,000 in estates of $10,000 is
exempt from the death duty, while a legacy of $1,000 in es-
tates of $11,000 and upwards is subject to that duty.   As
an incident to this exemption the stress of the duty or tax,
as imposed by the Act, falls upon those persons who hap-
pen to receive legacies from estates exceeding $10,000 in
value as distinguished from those persons who receive leg-

acies of the same amount from estates valued at $10,000 or less.

The precise claim of the appellant, as we understand it, is that this incidental inequality in the operation of the tax is an arbitrary distinction, which transforms the Act from one of legitimate taxation to a legislative decree selecting the persons described as subjects of legislative hostility, in violation of the fundamental law which protects the personality of all citizens from arbitrary and hostile discrimination.

We see no merit in this claim.  It is true that a distinction between estates of $10,000 and those of more than $10,000, for the imposition of death duties, whether computed upon the estates as a whole or upon the separate legacies derived from them, is arbitrary; it is not true that laying such a tax is an arbitrary and hostile discrimination against any person.

Taxation is necessarily arbitrary.  The general legislative design, that taxation shall bear as equally as practicable upon all persons in proportion to their ability, is, and must be, influenced and moulded by various and conflicting considerations incapable of systematic codification.  And every manifestation of that design, in selecting some and excluding other subjects and modes of taxation, is essentially arbitrary; that is, it must depend upon legislative will controlled only by legislative judgment and conscience.  The arbitrary selection essential to taxation is controlled by legislative, but not by judicial, discretion, and this is substantially true of every manifestation of a clearly granted legislative power. It is when the Constitution adopts as fundamental law a general principle regulating the mode of exercising some particular manifestation of legislative power, such as the law regulating the mode of imposing taxes by the supreme mandate " taxation must be equal," that the legislative discretion is subjected to judicial control.  The distinctions affirmed by courts in seeking some tenable theory of judicial action, when called upon to reconcile the essential inequality of taxation with some judicial enforcement of such indefinable supreme mandate, have no necessary connection with

the validity of taxation under a constitution which does not make this general maxim a supreme law controlling legislative discretion in the performance of a legislative duty.

The appellant seems to have lost sight of the distinction between a constitutional principle which runs with a particular legislative power, prescribing the manner of its exercise and so involving the subjection of legislative discretion to judicial control, and a constitutional principle independent of any legislative power, which defines the field of personal liberty and rights of property that no manifestation of legislative power can invade. It is a principle of the latter kind that must be invoked in the present case.

The question, then, is this: Is an imposition of death duties, with an exemption of estates of $10,000, an invasion of that constitutional principle which protects every citizen, standing alone or with others, from oppressive legislation against his personality, and limited in operation to him ? Is it an exercise of that despotic power of punishing citizens on account of their personality, which the Constitution has excluded from the grant of legislative power, and so, void because it is not legislation ? Clearly it is not. The stress of a tax may fall on the fortunate persons who happen to be recipients of legacies in an estate exceeding $10,000, and the value of the property bequeathed to them, as the subject of a property tax, may have no apparent relation to the considerations influencing the legislature in imposing a death duty in this matter. But these facts furnish no argument for holding that the law, under the cloak of taxation, is in reality an attempt to select these legatees for personal and hostile discrimination. When taxation is attacked, not because it violates a constitutional principle regulating the mode of taxation, but because it violates an independent constitutional provision defining the limits of legislative power, the fact that the stress of the tax may in some instances happen to fall in such manner that a tax directly laid for the accomplishment of such a result might be obnoxious to the constitutional provision, does not necessarily change legitimate taxation into the exercise of a forbidden power. This dis-

tinction is illustrated in *Knowlton* v. *Moore*, 178 U. S. 41, and is strongly illustrated in the sequels to that case : *Plummer* v. *Coler*, 178 U. S. 115, 119 ; *Murdock* v. *Ward*, ibid. 139 ; *Synder* v. *Bettman*, 190 id. 249.

By clear implication from the provisions of the United States Constitution, and the relations created by it between the governments of the several States and the National government, most of the means and instrumentalities essential to the existence of the one, as an independent government, are not subject to, but are protected from, the hostile attack by the other ; the power to cripple and destroy such instrumentalities of State governments is not within the legislative power granted to Congress, and the power to so attack such instrumentalities of the National government is not within the legislative power granted to State legislatures.

In *Knowlton* v. *Moore*, 178 U. S. 41, it was claimed that inasmuch as the States alone could create and regulate the rights in respect to property arising upon the death of its owner, the Act of Congress imposing death duties tended to cripple the State in the exercise of its governmental powers and was therefore void. The court held that death duties, independently of any theoretical distinction between rights to property arising upon the death of its owner and other property rights, were an established mode of taxation and clearly within the power granted to Congress, and that any incidental effect the Act might have upon a State's regulation of inheritances did not invalidate it.

In *Plummer* v. *Coler*, 178 U. S. 115, it was held that the mere fact that estates of decedents might consist in whole or in part of United States bonds did not render a State law imposing death duties, whose amount might be determined by the value of such bonds, invalid ; that the possibility of its incidental operation in remotely affecting the value of United States bonds was insufficient to stamp it as an attempt to impair the borrowing power of the United States, which is a means essential to its existence.

In *Synder* v. *Bettman*, 190 U. S. 249, a legacy tax, under an Act of Congress imposing death duties, was computed and

collected by the executors upon a legacy to the city of Springfield in the State of Ohio for its corporate and public purposes.    The executor paid to the State one tenth of this legacy, and the city of Springfield received the legacy thus decimated.    The claim was, that this practical operation of the Act made it in reality an attempt by Congress to cripple the instrumentalities of a State government, and so to exercise a legislative power not granted.    It was held that the death duty was not a tax upon property or person, and the mode of fixing its amount was within the discretion of Congress, and that the incidental operation of the tax, in this case, was not sufficient to change the character of the legislation.

The same distinction was illustrated in *Travelers Ins. Co.* v. *Connecticut,* 185 U. S. 364, 371, in determining whether legislative discrimination in imposing a tax clearly within its power of taxation, whose incidental operation might in some instances bear more heavily on nonresidents than on residents, was in reality an exercise of that power of hostile discrimination against citizens of other States which is excluded from the range of State legislative power by the Federal Constitution.    Such illustrations might be multiplied.

The general principle of constitutional construction they support may be thus stated : When a law confined to the exercise of some particular legislative power, whose manner of exercise necessarily rests in legislative discretion not limited by any constitutional mandate controlling the mode of exercising that particular power, is challenged as obnoxious to some independent constitutional provision defining or limiting the range of all legislative power, the attempt to exercise the forbidden power must clearly appear ; the mere form of the law is immaterial, if in substance and reality there is an exercise of the forbidden power.    On the other hand, a mere incident of its operation not being of its substance and insignificant in harmful result, although theoretically akin to results which might be accomplished through a direct exercise of the forbidden power, does not change the character of the law as a legitimate exercise of legislative power.

Applying this principle to the present case, it is obvious

that the ultimate burden of the tax that falls on persons who are legatees in estates exceeding $10,000 and not on persons who are legatees in estates of $10,000 or less, is a mere incident to the operation of a law enacted solely for the purposes of taxation and clearly within the legislative power of taxation, and is not an attempt, either in form, substance, or purpose, to exercise that power of favoring some persons and punishing others, at the mere will of the legislature, which the Constitution excludes from the grant of legislative power.

We think this is the true test of the appellant's claim, and, thus tested, it is without merit.    The law is not a classification of property for the purpose of taxation, which is subject to judicial control.    The tax is not on property, and in this State the legislature is not compelled to use such classification for the exercise of its taxing power, because the equality in operation of any particular tax is a consideration addressed to the legislature and not to the court.

The law is not a classification of persons for the purpose of imposing an appropriate burden on a particular class. The tax is not on persons ; if the stress of the tax is felt more heavily by some than by others, it is not due to legislative selection but to the mere accident of changing circumstances ; no person, nor set of persons, is selected arbitrarily or otherwise for legislative favor or punishment.    The law is simply and purely an imposition of an indirect tax or duty, not differing in harmful operation from other taxes, regulated in its scope and amount as the legislature deems best for the public interest.    And it is wholly immaterial whether or not it would be practicable for the legislature to select as a distinct class or set of persons the individuals on whom the ultimate stress of the duty laid by this law may fall, and impose a similar tax on them of such amount or in such manner that a law imposing that tax would cease to be taxation and would be an exercise of that forbidden and despotic power by which the personal equality of all citizens before the law may be destroyed.

This case, as well as every similar case, turns on its sub-

ordination to one of two constitutional principles, equally vital, independent of each other, occasionally apparently conflicting, but, ordinarily, with the exercise of common sense; easily distinguishable in their application to a particular case. The one erects a complete protection to that field excepted from any grant of legislative power marked by the circle which the Constitution draws around those civil rights belonging to every person by virtue of his citizenship ; beyond this line legislative, governmental power cannot pass. The other secures to the legislature, within the limits of granted powers, an absolute discretion, in their conscientious exercise for the use of which it is responsible to its constituents ; the people have made this principle essential to the free representative government established by them.

There is nothing in the statute to justify an attack upon it on the third and fourth grounds assigned ; the views of a majority of the court on the point of law involved are expressed in *State* v. *Travelers Ins. Co.*, 73 Conn. 255. It is sufficient to refer to that case.

The Superior Court is advised to sustain the demurrer and render judgment dismissing the appeal. Appellee is entitled to costs.

In this opinion the other judges concurred.