HENRY H. GALLUP, TREASURER OF THE STATE OF CON-
        NECTICUT, APPEAL FROM PROBATE.

First Judicial District, Hartford, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

76   617
f77   649
77   652
77   655
77   656
f77   661

The Act of 1897 providing for a "succession tax" (General Statutes,
§§ 2367-2377), declares that after certain exemptions or deductions
have been made, the "rest of the estate of every deceased person
shall be subject to the taxes" therein provided; and that "in all
such estates" any property "within the jurisdiction of this State,"
which shall pass by will or by the inheritance laws of this State,
shall pay a certain percentage of its value for the use of the State.
*Held:* —

1. That the statute was enacted, and should be construed, in view of
   the long existing and widely recognized principle, that for the
   purposes of administration, descent, and distribution, all the per-
   sonal property of a decedent, wherever situated, is within the ju-
   risdiction of the State in which the deceased had his domicil at
   the time of his death.
2. That as thus construed, all the personal property of a decedent
   domiciled in Connecticut was to be taken into account in com-
   puting the amount of the succession tax, although some portion
   of such property might be within the territorial limits of another
   State.
3. That the amendment of 1903 (Public Acts of 1903, Chap. 63) author-
   izing, under certain circumstances, a transfer tax upon the per-
   sonal property in this State of nonresident decedents, was not in
   conflict but in harmony with the construction above given to the
   Act of 1897.

Argued January 12th—decided April 15th, 1904.

APPEAL from an order and decree of the Court of Probate
for the district of Meriden determining the amount of a suc-
cession tax payable to the State, taken by the treasurer of
the State to the Superior Court in New Haven County and
reserved by that court, *Elmer, J.,* upon a demurrer to the rea-
sons of appeal, for the advice of this court. *Superior Court
advised to overrule the demurrer and to modify the order of the
Court of Probate.*

Owen B. Arnold, a resident of Meriden, died testate.    The

Court of Probate of the district of Meriden admitted his will to probate, and Charles H. Nettleton, his executor, duly qualified September 12th, 1900.   His property was inventoried and valued according to law, as follows : —

| | | | | | | |
|---|---|---|---|---|---|---|
| Real estate | . | . | . | . | . | $8,900.00 |
| Personal property | . | . | . | . | . | 242,738.87 |
| Total | . | . | . | . | . | . $251,638.87 |

The inventory included certain stocks, bonds and securities, valued at $75,832, which were in the possession and custody of the testator at Meriden, at the time of his death. The stocks and bonds are of corporations not domiciled in Connecticut, and organized under the laws of the United States or of other States, and include shares in the Adams Express Company, a partnership concern, or a joint-stock corporation in the nature of a partnership.

On April 3d, 1903, the Court of Probate computed the amount of succession tax payable to the State, and passed an order directing its payment by the executor.

The amount of the estate upon which the tax was computed, as set forth in the order, was ascertained as follows, to wit : by making deductions from the valuation of the property inventoried of,

| | | | | | |
|---|---|---|---|---|---|
| Foreign assets | . | . | . | . | . $75,832.00 |
| Statutory exemption | . | . | . | . | . 10,000.00 |
| Debts and expenses of administration | . | | . | 9,121.00 |
| United States internal revenue tax | . | | . | 4,492.91 |
| Total | . | . | . | . | . $99,445.91 |

The item called " foreign assets " represents the inventoried value of the stocks, bonds and other securities above mentioned.

The State treasurer appealed from this order, assigning as his substantial reason of appeal that the deduction of the item called " foreign assets " is not authorized by law.   The executor demurred because the item is authorized by law, and also because the law is unconstitutional.

*William A. King,* Attorney-General, for the State treasurer.

*Edward A. Harriman,* for Charles H. Nettleton, executor.

HAMERSLEY, J. The questions presented by this reservation involve the construction of an "Act Providing for a Succession Tax," passed in 1897. Public Acts of 1897, Chap. 201. This Act was slightly amended in 1901 (Public Acts of 1901, Chap. 123), and in 1902 its first section was modified with the evident intent of expressing more clearly the purpose and meaning of the Act, and as thus amended and modified was included in the Revision of 1902, appearing in §§ 2367 to 2377.

In 1889 the legislature passed an Act providing for a tax upon the transfer of property by will, inheritance, or deed, to a collateral heir or stranger to the blood of a decedent. Public Acts of 1889, Chap. 180. This Act was a condensed reproduction of an Act passed by the legislature of New York in 1885, and, in substantially the same form adopted by our legislature, was enacted by the legislature of Massachusetts in 1891. This legislation has never been before this court for construction. In New York, soon after 1885, the legislature made various alterations resulting in the specified imposition of a transfer tax upon the personal property found within the State belonging to nonresident decedents, as well as a tax upon the devolution of all personal property belonging to resident decedents. Somewhat similar changes were made by the legislature of Massachusetts soon after the passage of the Act of 1891.

It was after these changes were made that our Act of 1897 was passed. Our legislature repealed the Act of 1889, except as applicable to estates of persons then deceased, abandoned the policy peculiar to that Act, and substituted a new Act for giving effect to a modified policy, which it called "Providing for a Succession Tax." The new Act contains some language found in the old, but this language must be

read and construed in relation to the structure, purpose, and policy of the new Act.

We think, therefore, that the true meaning of the legislation contained in §§ 2367 to 2377 can be more correctly ascertained by considering those sections as independent legislation, without speculating as to the views we might have entertained in respect to the abandoned statute of 1889, framed on different lines and for a different purpose, had that statute ever come before us for construction.

" The Act imposes an indirect tax or duty of the kind known as death duties ; that is, an exaction to be paid to the State upon the occasion of death and the consequent transfer of ownership in the property of the decedent, through the intervening custody and administration of the law, to the persons designated by the law, through the statutes regulating wills, descents, and distribution." *Nettleton's Appeal*, 76 Conn. 235, 245. This duty is not a tax upon property nor upon person. The property of the decedent, as inventoried by his administrator, is valued not for the purpose of imposing a tax upon that property, but solely to furnish a basis for computing the amount of the duty to which the estate described in the Act is made subject.

The duty is not computed upon the amount of the property valued. Its amount does not depend upon the amount of that property. After the valuation of all the property inventoried, the Act contemplates a subtraction from this sum of the amount of the decedent's debts ; a subtraction from this remainder of the amount of the costs and charges of administration ; a subtraction from this remainder of the sum of $10,000 ; a subtraction from this remainder of the value of certain bequests for public benefit; and the computation of the amount of the duty upon the mathematical balance thus remaining.

The appellee claims, in substance, that the Act requires another subtraction to be made before the amount of the duty can be computed, namely, a sum equal to the total appraised value of all personal property not within the territorial limits of this State at the time of the decedent's death,

which was inventoried for the purposes of administration and distribution under the laws of this State.

This depends, in the first instance, on the purpose of the legislature as expressed in the provisions of the Act laying this particular tax. There are three plans which may be followed in subjecting the estate of a deceased person to a succession tax : (1) A tax based upon the distribution of the net proceeds of a decedent's property to the persons upon whom it devolves by force of the laws of the taxing State. This plan includes in the estate subject to the tax the net proceeds of a decedent's land situate in the taxing State, and in case the decedent was domiciled in the taxing State, but not otherwise, of all his personal property. (2) A tax based upon any transfer, actual or potential, of a decedent's personal property situate at his death within the taxing State, whether the net proceeds of that property pass to the decedent's beneficiaries by force of the laws of the taxing State, or not. Under this plan the tax is more nearly akin to an ordinary transfer duty. (3) The inclusion in one Act of a tax under each of these plans.

There would seem to be no constitutional objection to the adoption of either plan. *Blackstone* v. *Miller*, 188 U. S. 189. Our succession tax is laid in pursuance of the first plan, and the Act is framed in view of the existing law of domicil in relation to this subject.

Personal property is bequeathed by will, and is descendible by inheritance, according to the law of the domicil and not by that of its *situs*. *Eidman* v. *Martinez*, 184 U. S. 578, 581. It is a settled principle of law that the disposition, distribution of, and succession to, personal property, wherever situated, is to be governed by the laws of that State where the owner had his domicil at the time of his death. *Holcomb* v. *Phelps*, 16 Conn. 127, 132. Under our law it is the duty of the administrator at the place of domicil to inventory and account for all such personal property, and that property is regarded as within the jurisdiction of the State for purposes of administration and distribution. It is true that the actual *situs* of such property in another State involves a power or juris-

diction in that State in respect to it for certain purposes, including the power through process of administration to appropriate so much as may be necessary to the satisfaction of claims of local creditors; but such administration is ancillary to that of the domicil, and the jurisdiction thus exercised is not in denial of, but in aid of, that exercised at the owner's domicil. This principle of law, though founded on international comity, is equally obligatory upon our courts as a legal rule of purely domestic origin. This principle is settled and unquestioned law within this State. *Marcy* v. *Marcy*, 32 Conn. 308, 315 *et seq.*; *Russell* v. *Hooker*, 67 id. 24, 27; *Rockwell* v. *Bradshaw*, ibid. 8. It has generally been recognized by Federal and State courts as law binding throughout the United States. It is in the exercise of this power or jurisdiction in respect to the personal property of a decedent domiciled within its limits, that the State taxes a succession to that property notwithstanding some of it may have been at the decedent's death within the limits of another State. The legislature framed its Act in view of this law. The assertion of power over property outside its limits is limited to the purposes of succession, but to the extent of determining its descent or distribution, it claims jurisdiction of the property.

It is plain that this purpose of the legislature is expressed in the provisions of the Act. These clearly apply, primarily, and mainly, to estates of decedents domiciled in Connecticut. This is true of all our general legislation providing for administration of estates of deceased persons, from the first order of the General Court in 1639 (Col. Rec., p. 38) to the last Revision (1902), §§ 302, 303, 318. Until 1821 there was slight occasion (for reasons sufficient and of interest in connection with some of our earlier decisions, but unnecessary now to detail) to provide for appointment of administrators on estates of nonresident decedents, and in that year an Act for this purpose was passed. Statutes of 1821, p. 201. This distinction between the estates of decedents domiciled here and estates of those domiciled elsewhere, is based on substantial grounds justifying special or separate treatment, and legisla-

tion dealing generally or primarily with the former class does not apply to the latter, unless the latter is embraced within its terms or clearly falls within its equity. *Lawrence's Appeal*, 49 Conn. 411. That the Act under discussion deals generally and primarily with estates of deceased persons domiciled here, is patent from all the proceedings it authorizes and directs. The first step relates to the inventory required by the general statute (§ 323), which includes land within this State and all other property belonging to the decedent, including choses in action and personal property without the State. This general statute applies in its fullness only to estates of decedents here domiciled. Neither its requirements nor its penalties apply necessarily to all ancillary administrations, and the requirement to inventory personal property without the State cannot apply to such administrations.

The language of the Act, however, does imply that some estates of nonresident decedents, upon which ancillary administration is taken out, may be subject to the tax, and indicates these estates, namely, those consisting of lands within this State belonging to nonresident owners. Such estate is within the purpose of the Act.

Were it not for the rule of accuracy ordinarily applied to laws imposing a tax, these estates might fall within the equity of the Act, had this language not been used. For most purposes of administration and distribution, they are scarcely distinguishable from estates of domiciled decedents. But with estates consisting of personal property within this State belonging to a nonresident owner, it is different. They come neither within the letter nor the equity of the Act, but are excluded by the express terms, which subject to a succession tax only those estates which are in the hands of an administrator for the purposes of distribution under and in pursuance of the laws of this State.

The intent of the legislature in respect to the "estate" subject to the tax, is too clearly shown in the provisions of the Act to leave room for reasonable doubt. It is the net proceeds or residuum of land within this State owned by a

decedent, and of all personal property owned by one here domiciled, remaining for distribution or transfer in any form to the persons entitled thereto by force of the laws of this State, deducting therefrom the sum of $10,000 and the value of certain bequests. This, and no other, is the estate made subject to a succession tax.

The amount of a tax is measured through a percentage on the property thus devolving upon the successors, based upon a valuation previously made of all the decedent's property inventoried by the administrator. The percentage in respect to that portion of property in these estates, which passes to the decedent's immediate family, is one half of one per cent; and in respect to that portion passing to other successors, is three per cent.

In other jurisdictions it has been held that a law providing for a duty in the nature of a succession tax upon occasion of a succession to property of a decedent by his legal legatees or distributees, although general in its terms, includes, as subject to the tax, the personal property of a domiciled decedent wherever situate, and excludes, as subject to the tax, personal property of a decedent domiciled elsewhere, although situate at his death in the taxing State. *Wallace* v. *Attorney-General*, L. R. 1 Ch. App. 1; *Attorney-General* v. *Campbell*, L. R. 5 H. L. 524; *Eidman* v. *Martinez*, 184 U. S. 578; *Orcutt's Appeal*, 97 Pa. St. 179. This rule controls the personal property of a domiciled decedent, although the same law also imposes a tax in respect to personal property of a nonresident situate in the State. *Frothingham* v. *Shaw*, 175 Mass. 59. But our law specifically includes within its range the beneficial interest in all personal property of a domiciled decedent, and excludes the personal property of nonresident decedents within our limits.

Having ascertained, by the certain test of the provisions of the Act, its controlling purpose, the classes of deceased persons whose estates are made subject to a tax, the composition of those estates when they become subject to a tax, as well as the property from which they may be derived, the meaning of the language used in reference to this controlling

purpose, and which has suggested the appellee's contention, can readily be ascertained. That language is as follows: " § 2368. In all such estates any property within the jurisdiction of this state, and any interest therein, whether tangible or intangible, and whether belonging to parties in this state or not, which shall pass by will or by the inheritance laws of this state to the parent or parents," etc., " shall be liable to a tax of one half of one per cent. of its value for the use of the state; and any such estate or interest therein which shall so pass to collateral kindred, . . . shall be liable to a tax of three per cent. of its value for the use of the state."

The appellee contends that the words, " any property within the jurisdiction of this state . . . passing to " (the legatees or distributees of the decedent) " shall be subject to a tax of " so much per cent. on its value—separated from the context and treated as an isolated and independent phrase—impose a tax upon that property of the decedent, and on that property only, which is found at his death within the territorial limits of the State. This may be true, but it is immaterial. Such a method of exegesis is not construction of the law enacted, but the enactment of a new law.

The meaning of this section, and of all the language used, is controlled by all the provisions of the Act; and the language in question is specially and absolutely controlled by the first words of the section, in view of which alone it is used, namely, " in all such estates," that is, estates of deceased persons as defined by the provisions of the Act and made subject to a succession tax as provided. It is in reference to such estates, and to such estates only, that the language following is used.

The " property " referred to is that of which such estates consist, and no other. No property is referred to for the purpose of taxing that property. No such tax is imposed. The property of which such estates, so made subject to a succession tax, consist, is mentioned for the purpose of fixing the amount of that succession tax, as well as of con-

trolling the stress of the tax which may fall upon the successors in relation to their nearness of kin to the decedent.

Whether the legislature used the phrase, "within the jurisdiction of this state," as indicating its jurisdiction in respect to the descent and distribution of personal property belonging to decedents domiciled in the State, or in the narrower sense of local probate jurisdiction for the purpose of appointing an administrator, or as indicating property within the State limits, it used the word " property " to indicate the whole or proportional shares of estates as made subject to the tax, and, as thus used, "property " in such estates is within the jurisdiction of the State for the purpose of regulating its descent and distribution, is within the jurisdiction of the Court of Probate whose administrator holds it for distribution, and is within the State limits.

Why the legislature phrased this Act in several particulars precisely as it did, may not be clear. It was dealing with a subject of much difficulty and novel to the legislation of this State, with great brevity and disregard of detail. It is sufficient that its intent is expressed with certainty.

The Act lays a death duty in respect to the beneficial interest, which, by force of our laws, accrues to the beneficiaries of a decedent. The property, upon whose value the amount of the tax is computed, is that residuum of the decedent's property, inventoried under our law, remaining after claims of creditors and charges of administration have been satisfied. This property constitutes the " estates of deceased persons " referred to in the Act, and that portion of it remaining after deducting from it the sum of $10,000 and certain bequests, constitutes the estates spoken of as subject to the tax.

These estates may be derived from the land within the State belonging to any decedent, and from all the personal property of a decedent domiciled here, but cannot be derived from personal property in this State which belonged to a non-resident decedent. That property is left to the operation of any death duty that the State of the owner's domicil—

which State by our law can alone control its descent and distribution—may see fit to impose. This scheme of taxation is framed upon established principles, and is adapted to avoid the peculiar difficulties and to meet with fairness the interstate obligations attending the imposition of death duties. We think it is expressed with sufficient certainty, and do not feel justified in the employment of hypercriticism for the discovery of possible defects.

This view of the legislative purpose is strengthened by an examination of the amendment passed in 1903. Public Acts of 1903, p. 42. The legislature amends § 2368 by striking out the words "by the inheritance laws of this state," and inserting in lieu thereof the words " by inheritance." Having thus removed the bar erected by the original Act, against the use of any of its provisions for imposing a transfer tax on personal property of non-residents, it proceeds to authorize such a transfer tax and to prescribe the machinery for its collection, coupling this, however, with instructions to the treasurer not to collect such transfer tax in any case were the decedent resided in a State which does not collect transfer or succession taxes from personal property therein " belonging to the estates of Connecticut decedents." The amendment recognizes the justice of the scheme adopted in the original Act, and attempts its modification only so far as may be necessary to add to the force of example the influences of reciprocity.

In the present case the Court of Probate had no authority to deduct, for the purpose of computing the tax, the value of personal property inventoried by the executor and claimed to have been situate in other States at the time of the decedent's death, from the value of the estate remaining in the executor's hands for the payment of legacies and subject to the tax. It is immaterial whether the claims made as to the actual *situs* of the testator's personal property at the time of his death are correct in whole or in part.

The questions raised as to the constitutionality of the Act were disposed of in *Nettleton's Appeal*, 76 Conn. 235.

The Superior Court is advised to overrule the demurrer;

to modify the order of the Court of Probate so that the tax shall be computed upon the value of the estate without the deduction of the sum of $75,832 made by the Court of Probate, and to affirm the order as modified.

In this opinion the other judges concurred.