APPEAL OF HAMILTON E. SHAVER, LAURA A. HUGHES, AND LOUIS H. PORTER, EXECUTORS OF THE ESTATE OF JOHN McMULLEN, DECEASED.

Docket No. 4775.  Submitted December 15, 1925.  Decided June 21, 1926.

1. A transfer tax paid by the executors from the residuary fund of the estate to the State Tax Commissioner of West Virginia is a proper legal deduction from gross income.

2. An inheritance tax paid by the executors to the State of Connecticut is allowable as a deduction from the gross income of the estate.

*F. Carroll Taylor, Esq.*, for the petitioners.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

This is an appeal from the determination of deficiencies in income tax for the period from decedent's death, August 29, 1921, to December 31, 1921, in the amount of $23,721.91, and for the calendar year 1923, in the amount of $653.96, making a total deficiency involved of $24,375.87.  The questions involved are whether inheritance taxes paid to West Virginia in 1921, and to Connecticut in 1923, may be deducted in determining the net income of an estate.

FINDINGS OF FACT.

John McMullen died a resident of the State of Connecticut on August 29, 1921, leaving a will in which he appointed as executors Hamilton E. Shaver, Laura A, Hughes, and Louis H. Porter, who are the petitioners in this appeal.  Letters testamentary were issued by the Probate Court of Norwalk, Connecticut, on November 15, 1921, to the appointed executors, who duly qualified and at the time of filing this appeal were acting as the executors of the estate.

The will of the decedent provided for a number of devises, bequests, and trusts, and named Cornell University at Ithaca, New York, as residuary legatee.  Among the directions contained in the will was one that all inheritance taxes be paid from the residuary fund.

In the year 1921, the executors of the estate paid a tax to the State of West Virginia, which was imposed by the inheritance tax laws of that State, in the amount of $100,000.  The tax was imposed by reason of the fact that the decedent at the time of his death was the owner of 10,189 shares of the Atlantic Gulf and Pacific Company and 6 shares of the Atlantic Gulf and Pacific Company of Manila, corporations organized and existing under the laws of the State of West Virginia.  A receipt for this payment was issued by the State Tax Commissioner, reading in part—

---

[1] This decision was prepared by Mr. Graupner during his term of office.

* * * that the executors of the estate of said John McMullen have paid to the State of West Virginia the sum of One Hundred Thousand Dollars ($100,000.00) in full of the inheritance tax due the said state upon the transfer of said shares of stock.

None of the beneficiaries or fiduciaries of the estate resided in West Virginia.

In 1923 the executors of the estate paid a tax to the State of Connecticut, which was imposed under the inheritance tax laws of that State, in the amount of $6,873.01. A receipt for the tax was issued showing payment " Received from the Estate of John McMullen * * *."

In the income-tax returns for the estate filed for 1921 and 1923, the amounts of $100,000 and $6,873.01, paid to the States of West Virginia and Connecticut, respectively, were claimed as deductions from gross income. The Commissioner disallowed the claimed deductions, which resulted in the determination of the deficiencies from which this appeal was taken.

The accounts of the estate were at all times kept upon the cash receipts and disbursements basis.

### OPINION.

GRAUPNER: The petitioners, who are the executors of the estate of John McMullen, deceased, seek to deduct from the gross income of the estate the inheritance taxes paid by them to the States of West Virginia and Connecticut. The right to this deduction is claimed under section 214(a) (3) of the Revenue Act of 1921, which permits the deduction of " Taxes paid or accrued within the taxable year * * *."

Counsel for both parties concede that there are no decisions of the West Virginia courts construing the inheritance tax laws of that State. We must therefore turn to the Act itself and interpret it by application of general legal principles.

Counsel for the Commissioner directs our attention to the title of the Act, which reads:

An Act to amend and re-enact Sections 1, 2, 2(a), 2(b), 6, 9, and 19 of Chapter 33, of Barnes Code of West Virginia, of 1918 relating to taxes on inheritances, devises, distributive shares and legacies and to provide for the appraisement of estates subject to such taxes.

He also calls attention to the comment on the title of a taxing act made in *Knowlton* v. *Moore*, 178 U. S. 41, 65:

On the very threshold, the theory that the tax is not on particular legacies or distributive shares passing upon a death, but is on the whole amount of the personal property of the deceased, is rebutted by the heading, which describes what is taxed, not as the estates of deceased persons, but as " legacies and distributive shares of personal property." This, whilst not conclusive, is proper

to be considered in interpreting the statute, when ambiguity exists and a literal interpretation will work out wrong or injury.

To the same effect is *Smythe* v. *Fiske*, 23 Wall. 374, 380, where it is said, " Where doubt exists as to the meaning of a statute, the title may be looked to for aid in its construction." But, as said in the *Knowlton* case, the words used in a title are not conclusive, and we find, in *Shields* v. *Bennet*, 8 W. Va. 74, 86, it is said, " Still, brevity is a prevailing attribute in the character of a title. Consequently, its language should be construed in the most comprehensive sense * * *." And in *Johnson* v. *Harrison*, 47 Minn. 575; 50 N. W. 923, it is held, " The title was never intended to be an index of the law." We must therefore look further than the title of the Act for the basis upon which to build a proper interpretation of it.

A brief outline of the statute, with pertinent portions quoted, is as follows:

Section 1. Inheritances, devises, distributive shares and legacies subject to tax.—A tax payable into the treasury of the State shall be imposed upon the transfer in trust, or otherwise, of any property, or interest therein, real, personal, or mixed, of five hundred dollars or more if such transfer be * * *

(b) By will or by laws regulating descents and distributions, of property within the State, or within its jurisdiction, and the decedent was a non-resident of the State at the time of his death.

Sections 2 and 2a prescribe the rates of tax upon transfers, measured by the degree of relationship of the beneficiary to the deceased.

Section 2b exempts certain transfers from tax.

Section 3 provides for the method of determining market value of property.

Section 4 provides for a tax on devises and bequests in payment of debts.

Section 5 provides for the apportionment of tax on contingent interests, life estates, etc.

Section 6. Taxation of property of nonresidents—Penalty for transfer before payment of tax. The provisions of this act shall apply to the transfer of the following property belonging to deceased persons, non-residents of this state, which shall pass by will or inheritance under the law of any other state, or country, and such property shall be subject to the tax imposed by this chapter, to wit:

      *       *       *       *       *       *       *

(c) The transfer of shares of capital stock of all corporations organized and existing under the laws of this state, the certificates of which shares of stock shall be within or without this state.

      *       *       *       *       *       *       *

The transfer of shares of stock mentioned in subdivision (c) of this section, after the decease of the person owning the same, shall not be legal until the inheritance tax, or transfer tax, has been paid into the state treasury and certificates of release to that effect executed by the state tax commissioner. * * * Any * * * person having in his possession such property, before the inheritance tax is paid, or before official consent of the state

tax commissioner thereto is obtained, shall be liable to the state of West Virginia for such amount of inheritance tax as may be collectible upon the transfer, together with any interest that may accrue thereon, and in addition thereto, a penalty of five hundred dollars * * *.

Section 7. Lien of tax on property—Liability of executors, etc. All such taxes upon any transfer, and the interest that may accrue thereon, shall, until paid, be and remain a charge and lien upon the property transferred, superior to any lien created after such transfer, and no title shall vest or be transferred as to any such property, except subject to the lien for such taxes, and no such property shall be paid, transferred or delivered, in whole or in part, until the payment into the treasury of the state of the amount of such tax. The person to whom the property is transferred, if he shall receive the same before the tax thereon is paid, and the executors, administrators and trustees having charge of every estate so transferred, shall be personally liable for such tax and interest until its payment, and no statute of limitations shall be a defense to any action for the recovery thereof.

Section 8 provides for the suspension of payment in certain cases.

Section 9 provides that the tax is due and payable 90 days after the qualification of the executor, or within four months of the death of the decedent in case letters testamentary are not issued. This section also provides for the imposition of a penalty and interest on delinquent payments.

Section 10. Duty of executors, administrators, trustees, guardians, etc., as to payment of tax. Every executor, administrator, trustee, guardian, committee or other fiduciary having charge of an estate, any part of which is subject to such tax, and every person to whom property is transferred which is subject to such tax, but is not in charge of any such fiduciary, shall pay the same upon the market value of all the property subject to tax, whether there are or are not devises or bequests of successive interests in the same property, and whether such successive interests, if any, are defeasible or indefeasible, absolute or contingent. Such payment shall be made out of said estate in the same manner as other debts may be paid. Any such fiduciary may sell personal property for that purpose when necessary, and the circuit court may authorize him to sell real estate for the payment thereof in the same manner as it may authorize the sale of real estate for the payment of debts.

Section 11. Duty of foreign executor, administrator or trustee as to payment of tax. Whenever any foreign executor, administrator or trustee shall assign or transfer in this state any stock, bond or other security liable to any such tax, standing in the name of, or in trust for a decedent, he shall have the tax assessed on such transfer by the state tax commissioner, and shall pay the tax into the state treasury on the transfer thereof; otherwise any person having authority to make or permit such transfer, who shall make or permit it, shall be liable to pay the tax if he then had knowledge, or reasonable cause to believe, that the property was liable to tax.

Section 12 prescribes the duty of county courts and clerks to report transfers.

Section 13. Executor, administrator or trustee to file statement showing transfers subject to tax. With the inventory of every estate the executor, administrator or trustee shall file a statement showing, to the best of his judgment, whether any transfer of any property mentioned in such inventory is taxable hereunder * * *.

It will at once be apparent that the foregoing provisions of the statutes of West Virginia are similar to those of New York, which were involved in the *Appeal of Farmers Loan & Trust Co.*, 3 B. T. A. 97, and which are therein set forth at some length. In that appeal, after thoroughly reviewing the cases relied upon by both parties, the conclusion was reached that the tax is primarily imposed upon the transfer of an estate, the tax in the first instance being payable out of the taxable shares in the estate before they are transferred.

Under the statutes of both New York and West Virginia, the inheritance tax is " imposed upon the transfer " of property, and is graduated both by the degree of relationship of the legatee or heir and by the amount of property received. In the statute of West Virginia we find the additional provision that " Such payment [of tax] shall be made out of said estate in the same manner as other debts may be paid." (Section 10.) This provision, by placing the inheritance tax in the same category as debts of the estate, we believe, contemplates payment by the estate as distinguished from payment by individual distributees of the estate.

The Commissioner comments on section 7, which provides that the tax shall be a lien " upon the property transferred," and contends that under this provision the tax does not attach to the estate as a whole. This contention becomes groundless when it is recalled that the tax is upon neither the property transmitted nor the property received, but is a tax upon either the right of transmission or succession. The taxable right, of course, is closely connected with the property, for without property the right itself would be valueless, and the lien is placed upon the property merely as a means of safeguarding the collection of the tax.

The Commissioner also refers to section 9, which provides for the suspension of payment in case there is litigation pending at the time the tax is due, and reasons that if the tax were imposed on the whole estate there would be no reason for deferring collection of the tax under such circumstances. In view of the fact that the tax is graduated by the degree of relationship of the recipient and the amount of property received, it may be necessary to postpone collection until the beneficiaries and the extent of their rights can be determined, regardless of whether the tax is imposed on the estate as a whole or upon the individual shares of the legatees or heirs.

The provisions of the West Virginia statutes, being so nearly similar to the New York statutes in their terms and operations, may well be given the same construction. *United States* v. *Mitchell*, 271 U. S. 9.

The tax paid by the executors to the State of Connecticut was imposed by the General Statutes of 1918, as amended by certain chap-

ters of Laws 1919 and Laws 1921, effective July 1, 1921.   These statutes follow in form earlier inheritance tax acts of the State, some of which have been construed by the courts in cases hereinafter cited.   The Connecticut statute provides that all property owned by a resident at the time of his decease, which shall pass by will, shall be subject to the tax herein prescribed.   (Sec. 1261.)   The net estate is to be ascertained by determining the gross estate, and deducting certain specified charges (sec. 1263) upon information to be furnished by the executor (sec. 1267).   The rate of tax depends upon the degree of relationship of the person to whom the estate passes, and upon the amount so passing.   (Sec. 1264.)   The statute provides that the tax "shall be paid   *   *   *   by the administrator, executor, or trustee,   *   *   *   from property passing to the donee, beneficiary, or trustee, unless such recipient shall pay to the administrator, executor or trustee the amount thereof," except as otherwise provided in the will.   (Sec. 1268.)   The executor, administrator or trustee is liable for the tax and his accounts can not be settled until the tax is paid.   (Secs. 1268, 1269.)

A provision of the will of the decedent directs that all inheritance taxes be paid from the residuary fund.   This direction is in accord with express provision of the law and places the direct obligation for the tax upon the estate.   Under this provision the only beneficiary under the will to suffer a diminution is the residuary legatee.

Both parties in their briefs cite the *Appeal of Nettleton*, 76 Conn. 235; 56 Atl. 565.   However, in that case the court did not rule upon the question here involved, saying that the distinctions between so-called probate, succession, or legacy taxes " are of no practical importance in this case, and we do not consider the questionable claim that the act before us imposes a legacy tax, as distinguished from a tax on the estate."

The Commissioner relies upon *Appeal of Gallup*, 76 Conn. 617; 57 Atl. 699; *Appeal of Hopkins*, 77 Conn. 644; 60 Atl. 657; *Sherman v. Moore*, 89 Conn. 193; 93 Atl. 241; and *Corbin v. Townsend*, 92 Conn. 501; 103 Atl. 647, all of which are cited in petitioners' brief.   We are not satisfied that these decisions are material to the issue here involved.

The Revenue Act of 1921 permits an estate in process of settlement to deduct from gross income " estate, inheritance, legacy, and succession taxes."   The statute of Connecticut (sec. 1268) provides that the inheritance tax must be paid by the " administrator, executor, or trustee " of the estate, even though the portion of the tax allocable to a specific legacy be deducted therefrom on distribution. The statute further recognizes a testamentary direction as to how such taxes shall be paid and here we find the will directing that all inheritance taxes be paid from the residuary fund—the fund that

suffers diminution from all other expenses of administration and probate.

The Connecticut inheritance tax law is sufficiently similar in effect to the transfer tax of New York for us to hold that the amount of the tax is deductible from the gross estate. *Appeal of Farmers Loan & Trust Co.*, 3 B. T. A. 97. Although the legacies may be reduced by the amount of the tax, the estate pays the tax, and the assets of the estate are reduced by the payment. The only right which a legatee has is that of receiving his legacy, reduced by the amount of the tax. *United States* v. *Perkins*, 163 U. S. 625; 4 Am. Fed. Tax Rep. 4659.

In *Keith* v. *Johnson*, 271 U. S. 1, the Supreme Court, in holding that New York transfer taxes paid by the executor are legal deductions from the gross income of an estate, used this language, which well applies to the present proceeding:

It [the transfer tax] was primarily payable * * * out of moneys and other property of the estate; * * *. While this lessens the amount for distribution among the heirs, it cannot be said that they bore any part of that tax. As well might it be claimed that they paid the funeral expenses and debts, if any, of the intestate. No part of the transfer tax so paid could be taken by the heirs as a deduction in calculating their federal income taxes.

See *United States* v. *Mitchell*, 271 U. S. 9.

The estate of John McMullen, deceased, is entitled to deductions on account of the transfer tax paid to the State of West Virginia and the inheritance tax paid to the State of Connecticut, and those parts of the deficiencies arising from the denial of such deductions must be disallowed.

> *Order of redetermination will be entered on 10 days' notice, under Rule 50.*